

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-1046

| | |
|---|---|
| KHALEELAH BROWN<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered: May 10, 2017<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION<br>[NO. 60JV-15-720]<br><br>HONORABLE PATRICIA JAMES, JUDGE<br><br><br>AFFIRMED; MOTION GRANTED |

## KENNETH S. HIXSON, Judge

Appellant Khaleelah Brown appeals from the termination of her parental rights to her four children A.B., K.B., B.B., and R.B.[1]  Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), Khaleelah's counsel has filed a no-merit brief and motion to withdraw, asserting that there are no issues of arguable merit to support an appeal and that he should be relieved as counsel.  A copy of Khaleelah's counsel's brief and motion was mailed to Khaleelah, and after being informed of her right to file pro se points, Khaleelah declined to file any points.  We affirm and grant appellant's counsel's motion to be relieved.

---

[1]The children's father had little participation in the case, and his parental rights were also terminated.  The father is not a party to this appeal.

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015); *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Gray v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 24. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

This case began on May 19, 2015, when appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody of all four children. Attached to the petition were the affidavits of a DHS caseworker and criminal investigator stating that Khaleelah's youngest child, nine-month-old R.B., had been transported by ambulance to the hospital with serious injuries. Upon arriving at the hospital, R.B. had to be revived after he had stopped breathing and was unresponsive. R.B. was diagnosed with a subdural hematoma, a skull fracture, and retinal hemorrhaging consistent with shaken-baby syndrome. R.B. underwent emergency surgery to relieve pressure in his brain, and a blood clot was noted that was subacute, meaning it was 2−3 days old and could not have happened

that day. When asked how the injuries occurred, Khaleelah stated that, while the children's father was outside the house and she was using the restroom, R.B. fell out of Khaleelah's bed. R.B.'s doctor determined that R.B.'s injuries were too extensive to have been sustained from falling off a bed. On the same day the petition was filed, the trial court entered an ex parte order for emergency DHS custody of all four children.

On May 27, 2015, the trial court entered a probable-cause order. In that order, the trial court stated that R.B. was still in the hospital and that the other three children were in foster care. R.B. was on a ventilator, and both parents were suspected of child maltreatment. The father had been jailed for a probation violation, and he would remain in jail during most of these proceedings. In the probable-cause order, the trial court ordered no contact between the children and either parent.

On July 20, 2015, the trial court entered an adjudication order finding all four children to be dependent-neglected and setting the case goal as reunification. In the adjudication order, the trial court noted that a criminal investigator had attempted to inspect the bed and floor surface where R.B. had allegedly fallen, but that Khaleelah did not allow the inspector in her home. The trial court further noted the testimony of Dr. Maria Esquivel, who testified at the adjudication hearing that R.B. had to be revived twice during surgery and could have died. Dr. Esquivel also testified that R.B.'s injuries were consistent with a vehicle accident, a fall from a significant height, or being shaken. The trial court made the following specific findings in the adjudication order:

> [T]he Court finds by clear and convincing evidence that the children were subjected to abuse, parental unfitness, and aggravated circumstances by the mother. Regarding abuse, the Court finds that R.B.'s injuries are at variance with the history given by mother. Based on medical testimony, R.B. suffered nonaccidental physical injury,

specifically he is a child aged three or younger who was shaken. Regarding aggravated circumstances, the Court finds by clear and convincing evidence that R.B. was subjected to extreme cruelty, which is also defined as abuse, and this abuse endangered his life. The totality of these circumstances also leads this Court to find parental unfitness, and that the siblings are at risk of harm based on the extreme and cruel abuse to their brother. R.B.'s injuries would have been caused by a fall from a great height or motor vehicle accident, not falling off a bed. Dr. Esquivel testified that the child's injuries are consistent with "shaken baby syndrome." Further, the child had to be resuscitated three times during the time of the EMT arrival and the conclusion of his surgery. The Court finds Dr. Esquivel's testimony to be credible and compelling. Mother identified herself as the only adult [present] at the time the injuries occurred to R.B., based on her own prior statements. The Court finds that the other three children would not be safe in mother's care, based on this Court's findings today.

On November 4, 2015, the trial court entered a review order stating that Khaleelah had been arrested and charged with first-degree battery committed against R.B. In the criminal case, there was a no-contact order prohibiting any contact between Khaleelah and all her children. On May 2, 2016, the trial court entered a permanency-planning order finding that neither parent had made measurable progress in the case and that Khaleelah was awaiting a jury trial on the criminal charges. In the permanency-planning order, the trial court changed the case goal to termination of parental rights and adoption.

DHS filed a petition to terminate Khaleelah's parental rights on June 3, 2016. The termination hearing was held on July 27, 2016.

On August 30, 2016, the trial court entered an order terminating Khaleelah's parental rights as to all four children. The trial court found by clear and convincing evidence that termination of parental rights was in the children's best interest, and the court specifically considered the likelihood of adoption, as well as the potential harm of returning the children to Khaleelah's custody as required by Arkansas Code Annotated section 9-27-341(b)(3)(A). The trial court also found clear and convincing evidence of four statutory grounds under

subsection (b)(3)(B). Pursuant to subsection (b)(3)(B)(i)*(a)*, the trial court found that the juveniles had been adjudicated by the court to be dependent-neglected and had continued out of the custody of the parent for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent. Under subsection (b)(3)(B)(vi)*(a)*, the trial court found R.B. and his siblings dependent-neglected as a result of neglect or abuse that could endanger the life of the child, which was perpetrated by Khaleelah. Under subsection (b)(3)(B)(vii)*(a)*, the trial court found that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated that placement of the juveniles in the custody of the parent was contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent had manifested the incapacity or indifference to remedy those issues or factors, or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent. Finally, under subsection (b)(3)(B)(ix)*(a)(3)(B)(i)*, the trial court found that the parent had subjected any juvenile to aggravated circumstances because R.B. had been subjected to extreme cruelty, and also because there was little likelihood that services to the family would result in successful reunification.

At the termination hearing, Dr. George DeRoeck, a psychologist, testified that he conducted a psychological evaluation of Khaleelah. Based on his examination, Dr. DeRoeck thought that Khaleelah had been under a good deal of stress for a number of years and was woefully inadequately prepared to care for her children, which resulted in the significant injuries to R.B. In his report, Dr. DeRoeck noted that the children's father had

in the past been violent toward Khaleelah and the children, and Khaleelah admitted that he would leave marks on the children and she would cover them up. Dr. DeRoeck thought that the children's safety was at risk in Khaleelah's custody.

DHS caseworker Rachel Nichols testified that R.B. was making progress with his therapeutic services and that all four children were stable in their foster placements. According to Ms. Nichols, Khaleelah had not substantially cooperated with DHS, and Khaleelah had never provided an explanation for R.B.'s injuries that was consistent with the medical evidence. Ms. Nichols believed that the children would be at great risk of harm if returned to Khaleelah, and she thought that termination of Khaleelah's parental rights was in the best interest of the children. An adoption specialist, Jessica Warren, testified that all four children were adoptable.

In the no-merit brief, appellant's counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence supporting termination of Khaleelah's parental rights. Although the trial court found four grounds for termination, only one ground is necessary to support the termination. *See Draper v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58. In both the adjudication order and the termination order, the trial court found under Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)*(a)* that R.B. and his siblings were dependent-neglected as a result of abuse perpetrated by Khaleelah that could endanger the life of the child. In both the adjudication order and the termination order, the trial court also found under Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)* that there were aggravated circumstances because R.B. was subjected to extreme cruelty.

An adjudication order is an appealable order in a dependency-neglect proceeding. Ark. Sup. Ct. R. 6-9(a)(1)(A). When a party fails to appeal from an adjudication order and challenge the findings therein, she is precluded from asserting error with respect to those findings on appeal from an order terminating parental rights. *See Holloway v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 458, 468 S.W.3d 805. Because Khaleelah did not appeal from the adjudication order, which contained the trial court's findings by clear and convincing evidence that the children were dependent-neglected as a result of abuse that could endanger the life of the child, and that R.B. had been subjected to extreme cruelty, those grounds supporting termination cannot be challenged in this appeal. Moreover, on this record we conclude that the trial court did not clearly err in finding these statutory grounds based on the life-threatening injuries caused to R.B. while in Khaleelah's care, which were consistent with shaken-baby syndrome and inconsistent with Khaleelah's explanation for the injuries.

We also agree with appellant's counsel's assertion that there can be no meritorious challenge to the trial court's finding that termination was in the best interest of the children. There had been no contact between Khaleelah and her children since the children were removed from her custody. The psychological examiner and caseworker both testified that the children would be at risk of harm if returned to Khaleelah's custody, and there was evidence that all of the children were adoptable. Based on the evidence presented, the trial

court's finding that termination of Khaleelah's parental rights was in the best interest of the children was not clearly erroneous.

We observe that, although appellant's counsel has adequately explained why there can be no meritorious challenge to the sufficiency of the evidence supporting termination, there were two adverse rulings other than the termination itself that occurred during the termination hearing. Although appellant's counsel has abstracted these two adverse rulings as required by Rule 6-9(i)(1)(B), counsel failed to explain in his brief why each adverse ruling is not a meritorious ground for reversal as required by Rule 6-9(i)(1)(A). However, as we explained in *Houseman v. Arkansas Department of Human Services*, 2016 Ark. App. 227, 491 S.W.3d 153, even if an adverse ruling is omitted from a no-merit brief in a termination case, we may affirm if the ruling would clearly not constitute a meritorious ground for appeal. Such is the case with regard to each of the omitted adverse rulings here.

The first adverse ruling occurred when the trial court, over appellant's objection, admitted into evidence a positive hair-follicle drug test of one of the children. The next adverse ruling occurred during appellant's cross-examination of the caseworker, when the trial court sustained DHS's relevancy objection to appellant's question as to why the children had not been placed with their maternal grandmother. We conclude that neither of these evidentiary rulings amounted to an abuse of discretion and that any possible error did not affect the outcome of the proceedings. Therefore, these adverse rulings would clearly not constitute any meritorious ground for appeal.

After examining the record and appellant's counsel's brief, we have determined that this appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights and grant her counsel's motion to be relieved from representation.

Affirmed; motion granted.

ABRAMSON and MURPHY, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

No response.