

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-17-610

CHAVI STAMPLEY

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILDREN

APPELLEES

**Opinion Delivered:** November 15, 2017

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
ELEVENTH DIVISION
[NO. 60JV-16-106]

HONORABLE PATRICIA JAMES,
JUDGE

AFFIRMED; MOTION TO
WITHDRAW GRANTED

## MIKE MURPHY, Judge

Appellant Chavi Stampley appeals the April 25, 2017 order of the Pulaski County Circuit Court terminating her parental rights to her children N.S. and H.A. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2016), Chavi's counsel has filed a no-merit brief and a motion to withdraw alleging that there are no meritorious grounds for appeal. The clerk of this court sent a certified packet to Chavi notifying her of her right to file pro se points; Chavi has filed no points. After a full examination under the proper standards, we hold that counsel provided a compliant no-merit brief demonstrating that an appeal would be wholly without merit and that counsel's motion to be relieved should be granted.

Chavi Stampley gave birth to N.S. on January 8, 2016. At the hospital, Chavi displayed bizarre and irrational behavior that caused the nurses to be concerned that Chavi

may not be able to care for a newborn at home. The record demonstrates that, at that time, Chavi was fixated on excessively bathing and lotioning the child, alternating between feeding the child too much or too little, arguing with the medical staff about treating the child for syphilis, refusing to answer family medical-history questions, displaying emotional volatility, and indicating a belief that someone would come and take her baby away from her. Chavi's other child, H.A., was staying with his father. H.A. was nine at the time of removal.[1]

The nurses contacted the Arkansas Department of Human Services (DHS) about their concerns. DHS sent a caseworker to conduct an interview with Chavi. The caseworker explained to Chavi why she was there and attempted to ask Chavi some questions. Chavi became resistant and left many of the caseworker's questions unanswered. The caseworker attempted a second contact with Chavi, but again Chavi resisted speaking with the caseworker, left questions unanswered, and attempted to record the meeting on her phone. The caseworker was concerned about Chavi's mental stability and DHS exercised an emergency hold on both N.S. and H.A.

At the February 1, 2016 probable-cause hearing, Chavi testified that she was being falsely accused and that "every time [she] has a child, someone makes a false report on her." (Chavi testified she has nine children, but that some of them were grown and others had been taken away from her back in Minnesota.) She stated she did not need counseling or medication. The court found probable cause and ordered Chavi to submit to drug screens;

---

[1]H.A.'s father's parental rights were not terminated at this proceeding.

a drug-and-alcohol assessment; a psychological evaluation; counseling; and attend parenting classes.

Chavi did not attend the March 14, 2016 adjudication hearing. The trial court adjudicated the children dependent-neglected due to parental unfitness based on Chavi's instability and erratic behavior. Chavi was partially compliant at the July 13, 2016 review hearing but did not stay in contact with DHS thereafter. At the January 11, 2017 permanency-planning hearing, the court found Chavi had made no progress in the case, and that she "shows up long enough to cause a scene and disrupt proceedings while not following Court directives." Chavi was found in contempt at that hearing for repeatedly disrupting the proceedings. When being admonished by the court, Chavi smiled and laughed. The court changed the goal of the case to termination of parental rights and adoption.

DHS filed a petition to terminate parental rights on February 7, 2017, alleging the twelve-month-failure-to-remedy, subsequent-factors, abandonment, and aggravated-circumstances grounds. A termination hearing was held on April 5, 2017.

At the hearing, Chavi testified that she believed the Minnesota DHS and her mother had conspired against her for money, that DHS steals children for money, that DHS lies to gain custody of other people's children, and that the hospital staff had abused her baby. She testified that she was seeing her own therapist (who she could only identify as "Allen" and worked "off Cantrell") because she did not trust the DHS therapist. Chavi said she did not trust the DHS therapist "because they were trying to get me in there to falsely diagnose me

to fabricate some paperwork so that my kids could be taken and I didn't want to fall for that."

The caseworker testified that N.S. and H.A. were removed due to Chavi's mental instability and erratic behavior at the hospital, and since the beginning of the case Chavi has been noncompliant. She testified that Chavi had completed parenting classes and a psychological evaluation but had not been to a single visitation with her children in almost a year. The caseworker said that Chavi did not submit to a drug-and-alcohol assessment and did not show up for drug screens after the one positive test for marijuana early in the case.

An adoption specialist for DHS testified that both children are adoptable. To reach this conclusion, she had entered their characteristics in the matching tool database and found that, for the children together, there were 144 matches. Individually, N.S. had 382 matches and H.A. had 170.

The trial court terminated Chavi's parental rights on all grounds alleged in the petition in an order dated April 25, 2017. The trial court found that since the initial petition, Chavi had tested positive for drugs, not stayed in contact with DHS for random drug screens, not visited her children since May 24, 2016, and failed to follow the case plan and court orders. Chavi timely appeals.

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the children's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015); *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430

SLIP OPINION

S.W.3d 851. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Brown v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 303, 521 S.W.3d 183. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

In the no-merit brief, Chavi's counsel correctly asserts that there can be no meritorious challenge to the sufficiency of the evidence supporting termination of Chavi's parental rights. Although the trial court found four grounds for termination, only one ground is necessary to support the termination. *See Draper v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58.

The statutory ground of aggravated circumstances means, among other things, that a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(ix)*(a)(3)(B)(i)*. Here, the court found little likelihood that services to Chavi would result in successful reunification. We agree.

Chavi's children were removed from her care due to concerns about her mental health, because she had displayed emotional volatility and irrational behavior at the hospital. The children were subsequently adjudicated dependent-neglected based on Chavi's instability and erratic behavior, including her hesitancy to authorize necessary medical treatment for her infant.

Services were offered, and those services included a counseling assessment, drug-and-alcohol assessment, psychological evaluation, drug screens, and other family services. Chavi haphazardly participated in some services and refused others. She did not stay in touch with DHS to make herself available for random drug screens and she did not want to attend counseling with any DHS-referred therapists because she did not trust them. She alleged she sought her own counseling but could not provide any evidence thereof or even come up with the full name of her counselor or where she received services. Chavi stopped attending visitation with her children and by the entry of the order had not seen them for almost a year. The caseworker testified there was nothing to prohibit Chavi from doing so.

In its termination order, the court specifically noted its observation of Chavi's erratic demeanor, incongruent behavior, and odd stories at the termination hearing and throughout the case. It further provided that it had "observed no progress or benefit from any service in which [Chavi] may be participating." On this record, we conclude that the trial court did not clearly err in finding that these statutory grounds existed.

We also agree with counsel's assertion that there can be no meritorious challenge to the trial court's finding that termination was in the best interest of the children. In determining the best interest of the juvenile, a trial court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Myers v. Ark. Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. Potential harm must be viewed in a forward-looking manner and in broad terms. *Dowdy v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 180, 314

S.W.3d 722. The trial court is not required to find that actual harm would result or to identify a potential harm. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

Here, the court expressed no confidence that Chavi could consistently and safely provide for the children given her continued displays of paranoia, fixation, combativeness, and emotional volatility. It specifically found that establishing a goal of placement or continued contact with Chavi would result in harm to the children for those reasons. There was also evidence that the children are adoptable. Based on the evidence presented, the trial court's finding that termination of Chavi's parental rights was in the best interest of the children was not clearly erroneous.

Chavi's counsel also included in her brief a discussion of two rulings adverse to Chavi and explained why they would not support a meritorious appeal. The first concerned trial counsel's objection to the introduction of the green card showing proof of service of the petition for termination. Counsel objected because the green card had "not [been] authenticated" by the signing witness; however, at trial Chavi indicated it was her signature on the green card, which is sufficient to satisfy the admissibility requirements of Arkansas Rule of Evidence 901.

The second ruling involves an objection by Chavi's trial counsel when Chavi was asked if she believed DHS was corrupt in some way. Trial counsel objected, because the question called for speculation. The court overruled the objection because it did not think that expressing a currently held belief amounted to speculation. We agree with counsel that this did not constitute reversible error.

Cite as 2017 Ark. App. 628

After reviewing the record and counsel's brief, we agree with counsel that an appeal from the trial court's decision to terminate Chavi's rights would be wholly without merit. We are satisfied counsel has complied with the requirements of *Linker-Flores*, *supra*, and this court's rules, and none of the adverse rulings provide a meritorious basis for reversal.

Affirmed; motion to withdraw granted.

ABRAMSON and BROWN, JJ., agree.

*Dusti Standridge*, for appellant.

One brief only.