RAYMOND R. ABRAMSON, Judge
Mahmoud Abdi appeals the Pulaski County Circuit Court order terminating his parental rights to his son, H.A. On appeal, Abdi argues that the circuit court erred in finding that (1) a statutory ground supported termination and (2) it was in H.A.'s best interest to terminate his parental rights. We affirm.
On January 25, 2016, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect of H.A. In the affidavit attached to the petition, DHS alleged it had received a report concerning H.A.'s mother's, Chavi Stampley's, mental health after she gave birth to his half sister, N.S.[1] When a DHS worker made contact with Stampley, Stampley stated that she had left H.A. with Abdi while she gave birth to N.S. DHS interviewed Abdi, and he explained that he and Stampley had been in a relationship for ten years, but they were no longer together. He stated that he previously had custody of H.A. He had then returned custody of H.A. to Stampley, but a month before she was to give birth to N.S., she had returned custody back to him. The court entered an ex parte order for emergency custody on the same day the petition was filed.
On February 1, 2016, the court entered a probable-cause order. The court found probable cause for the emergency custody and awarded Abdi visitation with the child. On March 14, 2016, the court adjudicated H.A. dependent-neglected based on Stampley's parental unfitness, but the court found that Abdi did not contribute to the dependency-neglect finding. As to Abdi, the court found:
Mr. Abdi is the one that has taken care of [H.A.], but Mr. Abdi has made some poor decisions along the way. He should take advantage of the services offered to work past these issues so they are not concerns anymore. Mr. Abdi should encourage [H.A.], but he should not make any false promises. Mr. Abdi needs to stop drinking alcohol altogether. Alcohol has been an issue in his past; he had to *605 go to drug and alcohol classes because of it.
On July 13, 2016, the court held a review hearing. Danielle Kimbrough, a DHS employee, testified that Abdi was in partial compliance with the case plan in that he had visited H.A. and was attending parenting classes. However, she testified that he had tested positive for alcohol on a screening on May 10 and had not completed his drug-and-alcohol assessment. She further noted that he had attempted to complete his psychological evaluation but needed an interpreter and that a referral had been made. The court found that Abdi "is doing a bit better, but still needs work" and ordered him "to get going and finish services."
On January 11, 2017, the court entered a permanency-planning order. The court authorized DHS to proceed with termination of Stampley's parental rights, although the court found that Abdi had made substantial, measurable progress and ordered that services to him should continue. The court believed placement with Abdi could occur by or at the next hearing, which would be within three months. The court granted Abdi unsupervised visitation at the DHS office with progression to day visits at Abdi's home, at DHS's discretion. The court further ordered him to ensure that all his criminal fines, fees, and requirements were up to date.
On February 14, 2017, DHS filed a motion for revocation of Abdi's unsupervised visitation. DHS alleged that during the first unsupervised visit at Abdi's home, H.A. called his foster mother to pick him up because Abdi had drunk several bottles of liquor and had been so intoxicated that he would not wake up. When the foster parents arrived, they observed that Abdi appeared to be intoxicated. On the same day the motion was filed, the court entered an order revoking Abdi's unsupervised visitation.
On April 5, 2017, the court entered a permanency-planning order. The court found Abdi "has an alcohol problem. It is obvious to everyone but him." The court further found that DHS may make a drug-and-alcohol-assessment referral, but it did "not believe [Abdi] will be truthful." The court changed the goal of the case to adoption with proceeding toward termination of parental rights.
On April 21, 2017, DHS filed a petition for termination of Abdi's parental rights. DHS alleged three grounds for termination: (1) the child had been adjudicated dependent-neglected and had continued to be out of the home of the noncustodial parent for twelve months and despite a meaningful effort by DHS to rehabilitate the parent and correct the conditions that prevented the child from safely being placed in the parent's home, the parent had failed to remedy the conditions; (2) other factors or issues arose subsequent to the filing of the original petition for dependency neglect that demonstrate that placement of the child in the custody of the parent is contrary to the child's health, safety, or welfare and that, despite the offer of appropriate services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the child in the custody of the parent; and (3) aggravated circumstances: there is little likelihood that services to the family would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b) ; (vii)(a) ; (ix)(a)(3) (Supp. 2017).
The court held a termination hearing on June 19, 2017. Dr. George DeRoeck, a psychologist, testified that he performed a forensic psychological evaluation on Abdi on August 30, 2016, and that Abdi self-reported *606 that he did not have any issues with drugs or alcohol. He noted that Abdi has the intellectual capability to parent and that he had not noted a significant psychopathology.
Kimbrough, the DHS supervisor, testified that H.A. had been in foster care for about a year and four or five months and that she recommended termination of Abdi's parental rights due to his alcohol issues. She explained that Abdi had not had a trial placement with H.A., and she recounted the unsupervised visit that was prematurely terminated because Abdi was intoxicated. She stated that DHS had offered Abdi visitation, parenting classes, individual counseling, and a drug-and-alcohol assessment. She also stated that Abdi had received home studies on April 4 and November 11, 2016, and that both studies were favorable. She noted that he had completed individual counseling and parenting classes but that he delayed completing his drug-and-alcohol assessment until May 18, 2017. She stated that he tested positive for alcohol on February 19 and May 10, 2016, and February 14 and May 11, 2017. On cross-examination, Kimbrough admitted that Abdi had also tested negative on several alcohol screenings. She explained that DHS had administered fifty-four total screenings on Abdi and that he was always tested for drugs and tested negative each time; however, DHS did not always screen for alcohol.
Kimbrough testified that Abdi denies having any issues with alcohol; thus, she did not believe alcohol treatment would result in successful reunification with H.A. She noted that his drug-and-alcohol assessment recommended twelve group sessions and five individual sessions but that Abdi never received the recommendation because DHS received it at the end of May, and Abdi was arrested on June 1.
Kimbrough explained that Abdi was arrested in June due to an incident at the DHS office and currently remained incarcerated. Specifically, Abdi arrived at the office insisting to see H.A., and Kimbrough informed him that he had to pass an alcohol screening. Abdi refused to provide a sample and became irate and emotionally unstable. He then had to be escorted out of the building. Kimbrough believed that Abdi was under the influence of alcohol at the time of the incident. She did not know Abdi's criminal history or whether he was on probation at the time of the incident.
DHS then introduced into evidence Abdi's criminal-sentencing order dated September 24, 2015, which reflected a conviction for aggravated assault on a family or household member. Abdi received thirty-six months' probation.
Ruben Harris, the DHS caseworker assigned to H.A.'s case, discussed two alcohol screenings he administered on Abdi. Specifically, he testified that he administered a screening on February 14, 2017, at 5:58 p.m. at Abdi's apartment. He noted that the apartment was cluttered with pizza boxes, beer cans, and clothes and that Abdi registered a .04 blood-alcohol level. He testified that Abdi admitted drinking alcohol and "begged" him not to tell the court or the DHS supervisor. He testified that he also administered an alcohol screening on May 11, 2017, at about 5:00 p.m. and that Abdi tried to manipulate the test. After Harris corrected Abdi, Abdi registered a .02 blood-alcohol level. He noted that he completed a referral for a drug-and-alcohol assessment for Abdi on February 17, 2017. Harris further testified that he had difficulties contacting Abdi because he frequently changed phone numbers. He believed Abdi was employed at a truck stop or at the restaurant Sharks, but he had not visited Abdi's place of employment due to confidentiality.
*607 Angela Brown, an adoption specialist, testified that she assessed H.A.'s file for adoptability and that the results showed that 146 families are interested in adopting a child with his characteristics. She further testified that he does not have any specific characteristics that make him more difficult to place and that he is adoptable.
Abdi testified that DHS had communicated with him frequently until February 2017. He explained that after that time, DHS did not return his phone calls, and when he went to the DHS office, they told him it was unnecessary for him to come there. He testified that he works at different locations of Sharks throughout Little Rock, not a truck stop. He stated that he last drank alcohol on Valentine's Day of that year. However, on cross-examination, he admitted that when he was arrested, he had a half pint of alcohol in his possession and that he had consumed the other half of the pint. He also testified that he did not have an alcohol problem and that he would not drink alcohol if he had custody of H.A. Abdi testified that he received the recommendations from his drug-and-alcohol assessment on the day of the termination hearing but that he would be willing to complete the recommendations.
Abdi further testified that his probation officer had referred him to "alcohol abuse meetings" and that he had received a completion certificate. He stated that he had submitted the certificate to a DHS worker, but he did not remember her name. When questioned by the court, Abdi explained that he had completed the program in November or December 2015. He further testified that following the hearing, he would return to jail and that a $2500 bond had been set.
On July 24, 2017, the circuit court entered a written order terminating Abdi's parental rights based on the aggravated-circumstances ground and the subsequent-factors ground. The court further found it was in H.A.'s best interest to terminate Abdi's parental rights. Abdi timely appealed the termination order to this court.
We review termination-of-parental-rights cases de novo. Lively v. Ark. Dep't of Human Servs. , 2015 Ark. App. 131, 456 S.W.3d 383. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. Id. On appeal, the inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. Id. We give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. Id. The termination of parental rights is a two-step process. The circuit court must find by clear and convincing evidence (1) the existence of one or more statutory grounds for termination and (2) that termination is in the best interest of the children. Wafford v. Ark. Dep't of Human Servs. , 2016 Ark. App. 299, 495 S.W.3d 96.
Abdi first challenges the court's finding that a statutory ground supported termination. We first address his arguments concerning the aggravated-circumstances ground.
Abdi argues that the evidence in this case is insufficient to support a finding that aggravated circumstances existed to warrant termination. He argues that the court speculated that there was little likelihood that further services would result in successful reunification. He asserts that he *608 complied with the case plan and points out that in the January 2017 permanency-planning order, the court found that he had made significant, measurable progress to warrant the continuation of services. He claims that the only evidence to support the court's little-likelihood finding is the one failed unsupervised visitation. He acknowledges that he tested positive on alcohol screenings but points out that he also tested negative on several screenings and that his blood-alcohol level never registered above .04.
We find Abdi's argument unpersuasive and hold there was sufficient evidence to support the aggravated-circumstances ground. "Aggravated circumstances" means, among other things, that a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(ix)(a)(3)(B)(i) . In the March 14, 2016 adjudication order, the court stated that Abdi "needs to stop drinking alcohol altogether." However, Abdi tested positive for alcohol throughout the case. Even though Abdi tested negative on some screens and never tested higher than the legal limit, the evidence showed that his alcohol abuse is a significant problem. His first and only unsupervised visitation on February 11, 2017, with H.A. was prematurely terminated because he consumed alcohol and H.A. could not wake him. He was then arrested in early June 2017 following an incident at the DHS office, and Kimbrough testified that he appeared intoxicated and refused to submit to an alcohol screening. When he was arrested following the incident, he had a bottle of alcohol in his possession. Further, Abdi delayed completing his drug-and-alcohol assessment until May 18, 2017, despite receiving a referral in February 2017, and at the termination hearing, he denied having an alcohol problem. He further claimed at the termination hearing that he had last consumed alcohol in February 2017 but then later admitted he had consumed liquor in June 2017 after DHS had submitted a positive alcohol screen from May 2017. Given this evidence, we are not left with a definite and firm conviction that the circuit court made a mistake in finding that there was little likelihood that services to Abdi would result in successful reunification. Further, because only one ground is necessary for termination, we need not address Abdi's arguments concerning the subsequent-factors ground and the failure-to-remedy ground.
Abdi next argues that the circuit court erred in finding that it was in H.A.'s best interest to terminate his parental rights. A best-interest determination includes consideration of a child's adoptability and potential harm to the child if returned to the parent. Salazar v. Ark. Dep't of Human Servs. , 2017 Ark. App. 218, 518 S.W.3d 713. Abdi does not challenge the court's adoptability finding but argues that the court erred in finding that H.A. faced a potential risk of harm if placed in his custody. He argues that the circumstances here are similar to those in Rhine v. Arkansas Department of Human Services , 2011 Ark. App. 649, at 12, 386 S.W.3d 577, 583, in which this court reversed a circuit court's termination of a father's parental rights because there was no evidence that "any harm or real risk of potential harm was introduced into [the child's] life by [the father's] slight lapses in judgment."
In Rhine , the circuit court had ordered the father not to drink alcohol, and the father's parole conditions also included that he refrain from drinking alcohol. Id. The slight lapses in judgment included two incidents with alcohol. Id. The first incident involved the father drinking at home while the child spent the night at a friend's *609 house, and the second incident involved the father and child being in a car with another passenger who had an open container of alcohol. Id. None of the incidents led to criminal charges against the father or revocation of his parole. Id. Further, at the termination hearing, the father acknowledged his poor decisions and his need for improvement. Id.
We find the circumstances here unlike Rhine and that there was sufficient evidence of potential harm. In considering the potential harm caused by returning the child to the parent, the court is not required to find that actual harm would result or to affirmatively identify a potential harm. Welch v. Ark. Dep't of Human Servs. , 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms. Collins v. Ark. Dep't of Human Servs. , 2013 Ark. App. 90, 2013 WL 546940. Additionally, the risk for potential harm is but one factor for the court to consider in its analysis. Carroll v. Ark. Dep't of Human Servs. , 85 Ark. App. 255, 148 S.W.3d 780 (2004).
In this case, Abdi introduced a risk of potential harm into H.A.'s life when he drank alcohol during the February 2017 unsupervised visitation. Moreover, Abdi was in denial of his alcohol problem, lied at the termination hearing about the last time he drank alcohol, and delayed completing his drug-and-alcohol assessment. We are not able to say that the circuit court's best-interest determination is clearly erroneous.
Affirmed.
Glover and Murphy, JJ., agree.

The circuit court terminated Stampley's parental rights in a separate order, and we affirmed the court's decision in Stampley v. Arkansas Department of Human Services , 2017 Ark. App. 628, 533 S.W.3d 669.