

# ARKANSAS COURT OF APPEALS

DIVISIONS I and IV
No. CV-17-101

| | |
|---|---|
| HAYLEE MONIQUE BUNCH<br>APPELLANT | Opinion Delivered: June 7, 2017 |
| V. | APPEAL FROM THE MARION<br>COUNTY CIRCUIT COURT<br>[NO. 45JV-15-7] |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILDREN | HONORABLE DEANNA S.<br>LAYTON, JUDGE |
| APPELLEES | REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

Appellant Haylee Bunch appeals from the termination of her parental rights to her eight-year-old daughter, J.B., and seven-year-old son, C.B.[1] On appeal, Haylee challenges the sufficiency of the evidence, arguing that the trial court clearly erred in finding that termination of her parental rights was in the best interest of the children. We agree, and we reverse and remand.

We review termination-of-parental-rights cases de novo. *Dunn v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 34, 480 S.W.3d 186. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177

---

[1]The children's father, Catlin Bridgers, also had his parental rights terminated. However, Catlin did not appeal.

(1997). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Dunn, supra.* The purpose of terminating a parent's rights to his or her children is to provide permanency in the child's life when returning the juvenile to the family home is contrary to the child's health, safety, or welfare, and it appears that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. Ark. Code Ann. § 9-27-341(a)(3). A heavy burden is placed on a party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Grant v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 636, 378 S.W.3d 277. We will not reverse a termination order unless the trial court's findings were clearly erroneous. *Meriweather v. Ark. Dep't of Human Servs.*, 98 Ark. App. 328, 255 S.W.3d 505 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006).

In April 2015 the two children were living with their parents, Haylee Bunch and Catlin Bridges, in Flippin. On April 13, 2015, appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody of the children. Attached to the petition was an affidavit of a family-service worker stating that DHS had taken an emergency hold of the children after the police had gone to the residence on a domestic-disturbance call and found the front window and door broken. The police informed the DHS worker that both Haylee and Catlin were being arrested for domestic battery and endangering the

welfare of a minor, leaving the children without a caretaker. On April 14, 2015, the trial court entered an order for emergency custody. After a very brief stay in a foster home, the children were placed in the custody of their maternal grandmother, Monica Bunch, where they remained throughout the case.

The trial court entered a probable-cause order on May 26, 2015, and an adjudication order on July 9, 2015. The adjudication order set the goal of the case as reunification with the concurrent goal of relative placement. On January 12, 2016, the trial court entered a review order wherein both parents were ordered to attend counseling and anger-management classes, submit to random drug screens, avail themselves of employment services, and obtain appropriate housing. In addition, the parents were afforded visitation with the children a minimum of two times per week for two hours per visit.

On April 22, 2016, the trial court entered a permanency-planning order. In that order, the trial court found that both parents had complied with the case plan, and specifically that Haylee had completed counseling, assessments, random drug screens, and employment. The permanency-planning order set the case goal as placing the children in the custody of a parent within a time frame consistent with the juveniles' developmental needs, but no later than three months from the date of the permanency-planning hearing. The trial court also authorized a concurrent plan to obtain permanent custody with a fit and willing relative, stating that Monica Bunch may be named as permanent custodian in a separate proceeding should the need arise.

On September 23, 2016, the trial court entered a fifteen-month review order changing the goal of the case to termination of parental rights and adoption. In that order,

the trial court found that although the parents had partially complied with the case plan,

they were living with a friend, they were not in a position to have custody returned to

them, and there was no compelling reason to continue reunification services. The trial

court noted that both parents were involved in an altercation in April 2016, which resulted

in the police being called and Catlin being arrested. Haylee had admitted to using marijuana

that day.

DHS filed a petition to terminate parental rights, and after a hearing,[2] the trial court

entered an order terminating both parents' parental rights on November 10, 2016. The trial

court found clear and convincing evidence of the following grounds under Ark. Code Ann.

§ 9-27-341(b)(3)(B):

> (i)*(a)*  That a juvenile has been adjudicated by the court to be dependent-neglected
> and has continued to be out of the custody of the parent for twelve (12) months and,
> despite a meaningful effort by the department to rehabilitate the parent and correct
> the conditions that caused removal, those conditions have not been remedied by the
> parent.
>
> . . . .
>
> (vii)*(a)*  That other factors or issues arose subsequent to the filing of the original
> petition for dependency-neglect that demonstrate that placement of the juvenile in
> the custody of the parent is contrary to the juvenile's health, safety, or welfare and
> that, despite the offer of appropriate family services, the parent has manifested the
> incapacity or indifference to remedy the subsequent issues or factors or rehabilitate
> the parent's circumstances that prevent the placement of the juvenile in the custody
> of the parent.

The trial court further found by clear and convincing evidence that termination of parental

rights was in the children's best interest, and the court specifically considered the likelihood

that the children would be adopted, as well as the potential harm of returning them to the

---

[2]Haylee appeared at the termination hearing. Catlin did not.

custody of their parents as required by Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii). In reaching its decision, the trial court relied specifically on the testimony of the DHS caseworker who testified that the maternal grandmother, Monica Bunch, wished to adopt the children.

Janie King testified at the termination hearing. Janie testified that she is a friend of the family and that Haylee lives with her in her home in Lakeview. Janie stated that Catlin had also lived with her, but that she made him leave more than a month ago because he had issues with drinking and drugs. Janie stated that she is an older lady and is in a wheelchair, and that she allowed Haylee to stay with her until Haylee "got [her] feet on the ground." Janie indicated that she has never had any problem with Haylee and that Haylee helps her with things around the house. Janie stated that Haylee had "hunted for a job forever" but that there were very limited employment opportunities in Lakeview and that Haylee "doesn't have a car and that's very difficult." Janie stated that Haylee did have an upcoming interview with a local restaurant. Janie testified that Haylee loves her children and that the children love her and want to live with her.

Haylee testified that she has lived with Janie during the entire case and that she takes care of Janie as payment for letting her stay there. Haylee stated that she has a car and had attempted to have it repaired with some financial help from DHS, but that it was going to cost thousands of dollars and was still in the shop. Haylee stated that during the case she had worked at Goodwill and also at a local factory, but was currently unemployed. She indicated that she was actively seeking employment and was optimistic about being hired either at a local restaurant or the factory where she had previously worked. Haylee stated

that if the children were returned to her they could take the bus to school, and she also stated that she has a friend who is willing to help her with transportation.

Haylee acknowledged that she was on probation for a drug charge that occurred in 2011 but said that she was complying with her probation. Haylee also acknowledged some other legal problems, noting that she had recently been arrested and jailed for a few days for failing to appear after being cited for having no tags on her vehicle. She also had a pending court date for driving on a suspended license, but she said she had no additional criminal charges. Haylee admitted that, on one occasion in April 2016, she smoked marijuana at a barbeque. This was detected on a random drug screen she submitted to on April 25, 2016. However, Haylee maintained that she had not used marijuana since then, and this was confirmed by consistently negative drug tests between that time and the time of the termination hearing. Haylee tested positive for prescription drugs on a couple of occasions, but she produced evidence that she had a prescription for amoxicillin and oxycodone from a local dentist. Haylee stated that she had split with Catlin about two months ago.

Haylee testified that her bond with her children is very strong and that her children ask to come home all the time. She asked for more time toward reunification, stating that she loves her children, that she is a good mother who is capable of taking care of them, and that her children did not want to be without her. Haylee stated that she and her mother, Monica Bunch, got along and that Monica has provided a good home for the children. However, Haylee testified that "I want to provide that home for them."

Corrine Steel, a program assistant for DHS, supervised some of the visits between Haylee and her children. Corrine testified that the children enjoy seeing Haylee and that

Haylee is great with them. Corrine stated that the children love Haylee, are very bonded with her, and ask if they are going to live with her.

DHS caseworker Jennifer Matney testified that Haylee was in compliance with the case plan during most of the case. Jennifer stated that DHS did an evaluation of Janie King's home and that the home was appropriate, although Haylee had been unable to obtain her own housing.

Jennifer acknowledged that the children "are definitely bonded to their mom," but nonetheless recommended termination of Haylee's parental rights, citing Haylee's legal problems and her lack of employment, transportation, or her own home. Jennifer testified that the children are adoptable and that their grandmother, Monica Bunch, wanted to adopt them if Haylee's parental rights were terminated. Jennifer was confident that Monica would protect the children, and she thought that Monica adopting the children would be in their best interest because they would remain with family and keep the family bond. Jennifer anticipated that the children would continue to have contact with Haylee even if they were adopted by Monica because Monica is Haylee's mother and there is "always going to be a connection there." Jennifer thought that this was in the children's best interest.

In this appeal, Haylee does not challenge the statutory grounds supporting termination. Haylee instead argues that the trial court clearly erred in finding that termination of her parental rights was in the best interest of the children, particularly in light of the fact that the children were living with their grandmother at the time of the termination. We agree.

In support of Haylee's argument on appeal, she relies on our decision in *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851. In *Cranford*, we reversed the termination of both parents' parental rights pursuant to our holding that the trial court clearly erred in finding termination to be in the children's best interest. In that case, after the child was removed from the parents, he was placed in the custody of his maternal grandparents. The grandmother testified that she had always played a significant role in the child's life and was willing to adopt him, and she acknowledged that the parents were not presently able to care for the child so the child should remain with her and her husband. However, the grandmother testified that, whether there was an adoption or guardianship, she wanted both parents to remain in the child's life and for there to be a regular visitation schedule. In reversing the termination order in that case we relied largely on the custody arrangement, and reasoned:

> This court is certainly aware of the need for certainty, stability, and permanency in a child's life. However, we are unable to subscribe to the idea that termination in this case will necessarily provide greater stability in S.C.'s life because he is in the custody of his grandparents, who will continue to care for S.C. and presumably be just as willing to adopt him at some future time should reunification efforts ultimately fail. We do not share DHS's concern that termination is necessary to ensure that S.C. does not "languish in foster care indefinitely," because he is not in foster care with strangers. He has continued in the custody of grandparents in the same place that he lived before this case began, and that is where he will remain whether or not his parents' rights are terminated in these proceedings.
>
> This dependency/neglect case does not present the typical situation where the child is in the custody of nonrelative foster parents, or where the foster parents have expressed the desire to adopt[.] On the contrary, the custodian/grandmother in the present case expressly stated her desire that the child have continued contact with his parents as this is in the child's best interest. While time is of the essence in most termination proceedings, it is markedly less so given the factors presented in this case. We see little harm in affording both Tiffany and Christopher more time to pursue reunification with S.C., and such efforts come with a potential benefit to the child.

Under the facts of this case, we conclude that the trial court clearly erred in finding that termination of parental rights was in S.C.'s best interest.

*Cranford*, 2011 Ark. App. 211, at 11−12, 378 S.W.3d at 857 (citations omitted).

In the present case, as in *Cranford*, the children are in the custody of their grandmother. And like *Cranford*, there is ample evidence that continued contact with their mother is in the children's best interest. From the testimony of Janie King, both DHS employees, and Haylee herself, it is beyond dispute that these children are strongly bonded with Haylee and would like to return to her custody. Although Haylee was not in a position to regain custody of the children at the time of the termination hearing, the testimony showed that Haylee lived in appropriate housing and was trying to find employment. Haylee had only a single positive drug test for marijuana several months before the termination hearing and had ended her relationship with the children's father, who had consistently tested positive for drugs during the case. Haylee had been complying with the case-plan requirements, and there was no evidence that she had ever harmed the children. It appears that the primary reason for termination was Haylee's lack of financial means, and we cannot agree that this was a sufficient basis to terminate her rights to her children.

In DHS caseworker Jennifer Matney's testimony she expressed the desire for the children to be adopted by their grandmother, thereby remaining in her custody, and to continue having contact with their mother. This being so, as in *Cranford*, there is no urgency for permanency and stability in this case because, whether or not termination occurs, the children will remain in the custody of their grandmother in the same place they have lived since shortly after their removal from Haylee's custody. Particularly in light of the undisputed bond between these children and their mother, we see little harm in affording

Haylee more time toward reunification, and such efforts come with a potential benefit to the children.  *See Cranford*, *supra*.  On this record, we hold that the trial court clearly erred in finding that termination of Haylee's parental rights was in the children's best interest.

Reversed and remanded.

VIRDEN, WHITEAKER, and MURPHY, JJ., agree.

GRUBER, C.J., and KLAPPENBACH, J., dissent.

**RITA W. GRUBER, Judge, dissenting.**   Because I believe the majority's decision to reverse this case is contrary to our legislature's intent in termination-of-parental-rights cases, I respectfully dissent. Our legislature has made clear that the intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3).

The majority relies on this court's decision in *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851, in reversing this case. In *Cranford*, the maternal grandmother testified that she was willing to adopt the children but  that she would rather "be the grandparent instead of the parent." Since *Cranford*, this court has held that domestic abuse, drug-related issues, and incarceration during the pendency of the case support a court's finding of potential harm, even when a child is placed with a relative. *McElwee v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 214, at 9–10, 489 S.W.3d 704, 709.

At the time of the termination hearing in this case, the children had been out of Ms. Bunch's care for eighteen months. The court specifically found that Ms. Bunch had not

"taken the opportunity to obtain her own suitable housing for herself and the children," that she was without employment or transportation, and that she continued to "put Catlin Bridgers first" instead of her children. Ms. Bunch admitted at the termination hearing on September 14, 2016, that she was currently serving a ten-year probation sentence and that she had been arrested on September 10, 2016, for failing to appear in court in Ash Flat. She conceded that she "back-slid" and smoked marijuana while the case was ongoing and that she continued to have positive drug tests despite having completed drug treatment. Further, she and Catlin were involved in another domestic incident in April 2016. Catlin shared the bedroom in Janie King's home with Ms. Bunch immediately prior to his one-month incarceration. During Catlin's incarceration, Ms. King discovered syringes under the bed. Despite this occurring shortly before the termination hearing and their "split up," she testified that she would "speak to Catlin again." Here, unlike *Cranford*, the children did not reside with the maternal grandparent before removal, nor did the grandparent testify at the termination hearing, much less state that she "wanted to be a grandparent instead of the parent."[1]

While I do believe that Ms. Bunch was well bonded with her children, I do not believe that the court clearly erred in terminating her parental rights. Eighteen months is a significant period of time when viewed from the children's perspective, and I do not believe

---

[1]Based on findings in the permanency-planning order and the fifteen-month review order, there were disagreements between Ms. Bunch and the maternal grandmother (foster parent). Ms. Bunch testified the disagreement had been based on her continued relations with Catlin.

that a permanent placement with the grandparent would provide the same permanency for the children as adoption would.

None of us has a crystal ball and can determine whether Ms. Bunch will ever become an appropriate parent. What we do have is a trial judge who has presided over this case for the entire eighteen months leading up to the termination hearing. We, as appellate judges, are required to rely on the fact-finder's credibility determinations based on his or her evaluation of the witnesses, the testimony, and the child's best interest. *Ross v. Ross*, 2010 Ark. App. 497, at 2.

I see the majority's decision to continue these children in a state of prolonged uncertainty and to reject the trial court's credibility determination as being contrary to our statutory framework and certainly not in these children's best interest. *See Coleman v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 851, 379 S.W.3d 778; *see also Smith v. Ark. Dep't of Human Servs.*, 2017 Ark. App. ___. This trial judge did not clearly err.

For the above reasons, I respectfully dissent.

KLAPPENBACH, J., joins.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.