MIKE MURPHY, Judge
Rose Corley and Joey Bilbrey appeal the November 29, 2017 order of the Garland County Circuit Court terminating their parental rights to their four children, twins AB and EB (d.o.b. 1/15/15), MB (d.o.b. 8/13/13), and GB (d.o.b. 10/29/10). They argue the lower court erred in finding that grounds existed for termination and that termination was in the best interest of the children. We affirm.
I. Facts
This case began on September 7, 2016, when the Arkansas Department of Human Services (DHS) received a report of environmental neglect through the child-abuse hotline. The affidavit included with the petition for removal alleged that when DHS made an unannounced visit to the home, the floors were covered in trash, dirty clothes, and animal feces. There were no diapers for the younger children, and both parents tested positive for methamphetamine, MDMA, and opiates. The oldest child, GB (then six), tested positive for methamphetamine. DHS exercised a seventy-two-hour hold on the four children.
The case progressed through emergency and probable-cause hearings with corresponding findings and orders entered. On November 18, 2016, the children were adjudicated dependent-neglected based on environmental neglect and parental unfitness because of the parents' illegal substance abuse. The parents were ordered to comply with the case plan, which required that they refrain from drug use; submit to random drug screens; complete parenting classes; attend individual- and family-counseling sessions; maintain stable and appropriate housing, income, and transportation; and complete psychological and drug-and-alcohol assessments and all recommended treatment.
Two review hearings were held, one on February 22, 2017, and the other on May 10, 2017. At the permanency-planning hearing on August 23, 2017, the trial court found that the parents had not made significant and measurable progress toward reunification and changed the goal from reunification to termination of parental rights. On September 22, 2017, DHS filed a petition to terminate parental rights, alleging the grounds of twelve months failure to remedy, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a) (Supp. 2017), and subsequent factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) .
The termination hearing took place on November 29, 2017. Family service worker Jamie Moran testified that the parents did *541 have some compliance during the case but that Corley never sought employment during the case and that both parents tested positive for amphetamines and methamphetamine the week before the termination hearing. Moran testified that Corley never submitted to outpatient drug treatment. She testified that Bilbrey never submitted to a drug-and-alcohol assessment or completed any outpatient or inpatient drug treatment. She testified that the parents never progressed to the point that their visitation could be unsupervised.
Kelsey Lewis, GB's therapist, testified. Because of GB's behavioral issues, she recommended that visits stop in November 2016. However, the parents were participating and engaged in family therapy with GB. Lewis testified that as of the date of the termination hearing, if GB were to return home with his parents, he would be at risk of continued neglect and emotional distress. The trial court also received testimony from DHS's adoption specialist that the children are adoptable but that there was no guarantee that the siblings would be adopted together.
Catherine Francioni, Bilbrey's employer, testified. She indicated that Bilbrey had been an employee of hers for two years. He was dependable. He was working roughly thirty-six hours a week making ten dollars an hour and that his employment was stable.
Finally, Corley testified. She admitted that drugs had impacted her housekeeping chores in the beginning of the case. She testified that there were only two instances when she tested positive for drugs: at removal and shortly before the termination hearing. Corley testified that she had told her caseworker that she wanted substance-abuse treatment but that the Quapaw House had indicated it had not yet been paid. She testified that she called the outpatient center several times but was never able to arrange treatment.
At the conclusion of the termination hearing, the trial court terminated the parental rights of Bilbrey and Corley pursuant to the twelve-months-failure-to-remedy ground found in Arkansas Code Annotated section 9-27-341(b)(3)(B)(i). It found that termination of parental rights was in the best interest of the children. This timely appeal follows.
II. Standard of Review
We review termination-of-parental-rights cases de novo. Bunch v. Ark. Dep't of Human Servs. , 2017 Ark. App. 374, 523 S.W.3d 913. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Bunch , supra . A heavy burden is placed on a party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. Id. We will not reverse a termination order unless the trial court's findings were clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id.
III. Grounds
A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Ark. Code Ann. § 9-27-341(b)(3)(B), and that termination is in the best interest of the *542 child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).
Proof of only one statutory ground is sufficient to terminate parental rights. Contreras v. Ark. Dep't of Human Servs. , 2015 Ark. App. 604, 474 S.W.3d 510. The failure-to-remedy ground, codified at Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(a) & (b) , provides that termination is appropriate when a juvenile has (1) been adjudicated by the court to be dependent-neglected and (2) continued to be out of the custody of the parent or the home of the noncustodial parent for twelve months and, (3) despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that either caused removal from the custodial parent or prohibited placement with the noncustodial parent, the conditions have not been remedied.
In its order terminating Corley's and Bilbrey's parental rights, the circuit court found that
[t]he juveniles have been out of the custody of the parents for over twelve months and the parents have not corrected the circumstances which brought them into the state's custody and prevent return or placement of the juveniles in their home; the mother has not completed an outpatient treatment program as recommended by her drug/alcohol assessment; the father has not submitted to any drug/alcohol treatment program; the parents have not obtained stable housing; and the parents have not remained clean and sober as they tested positive for methamphetamines on November 20, 2017. The Court also finds that the parents have not made significant progress toward completion of the case plan. The juveniles need and deserve permanency.
On appeal, the parents argue that DHS did not make meaningful efforts to provide services or rehabilitate the family and correct the conditions that caused removal or prohibited placement.
We disagree and hold that there is sufficient evidence that DHS provided meaningful services to both parents. At the termination hearing, the DHS caseworker testified regarding the various services that had been provided to Corley and Bilbrey. The caseworker testified Corley had not submitted to the outpatient treatment that DHS offered and that Bilbrey had not completed his drug assessment and had not completed any outpatient or inpatient drug treatment. And, despite Corley and Bilbrey's attending the counseling and parenting classes DHS had arranged for them, the case never progressed to a point that unsupervised visitation could be attempted.
Corley contends that not completing outpatient treatment was due to DHS's failure to pay for the treatment, and thus it was no fault of her own. She points to testimony from the caseworker regarding the caseworker's inability to recall whether Corley had been told that outpatient services had been paid for. The caseworker testified, however, that "for a certainty" payment for the services had been arranged and completed since around July of that year. Even still, Corley testified she knew how vital completion of drug-treatment services was to her case plan. Corley also knew how to contact both the provider of these services and DHS. That there may have been some difficulties surrounding this service-one of a range of services offered by DHS-does not lead us to a conclusion that DHS did not make a meaningful effort with this family over a *543 fourteen-month period. We are not left with a definite and firm conviction that a mistake has been made.
IV. Best Interest
In determining whether termination is in the best interest of a child, the trial court must consider the entire history of the case and all relevant factors in the case, including the likelihood that the child will be adopted and the potential harm that would be caused by returning the child to the custody of the parent. Chaffin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 522, at 5, 471 S.W.3d 251, 255. Adoptability and potential harm, however, are merely two factors to be considered and need not be established by clear and convincing evidence. Id.
Corley and Bilbrey argue that given their appropriate interactions with GB in therapy and consistent positive contact with their other children, coupled with their now-appropriate home, the circuit court erred in finding that termination was in the children's best interests. They characterize their failed methamphetamine tests just prior to the termination hearing as a "lapse in judgment" and compare it to the parent's relapse in Rhine v. Arkansas Department of Human Services , 2011 Ark. App. 649, 386 S.W.3d 577.
In Rhine , the trial court had ordered the father not to drink alcohol, and the father's parole conditions also included that he refrain from drinking alcohol. Id. The slight lapses in judgment included two incidents with alcohol. Id. The first incident involved the father drinking at home while the child spent the night at a friend's house, and the second incident involved the father and child in a car with another passenger who had an open container of alcohol. Id. Neither of the incidents led to criminal charges against the father or revocation of his parole, and at the termination hearing, the father acknowledged his poor decisions and his need for improvement. Id.
The circumstances here, however, are not like those in Rhine , and despite the parents' contentions otherwise, there is sufficient evidence of potential harm. In considering the potential harm caused by returning the child to the parent, the court is not required to find that actual harm would result or to affirmatively identify a potential harm. Welch v. Ark. Dep't of Human Servs. , 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms. Abdi v. Ark. Dep't of Human Servs. , 2018 Ark. App. 173, 544 S.W.3d 603. Additionally, the risk for potential harm is but one factor for the court to consider in its analysis. Id.
Here, the case began when, among other things, a young child and his two parents tested positive for methamphetamine, and they lived in a dirty home in which the children were unsupervised due to the parents' drug use. In this context, both parents testing positive for methamphetamine two weeks before the termination hearing was much more significant than the "minor incidents of noncompliance," because the parents' use of methamphetamine was the primary risk to the children's health, safety, and welfare in this case. Corley also admitted in her testimony that at least two weeks before the termination hearing, she had socialized with known methamphetamine users and had allowed them into her home. On these facts, there is no basis for a "firm conviction" that the trial court's potential-harm finding was a mistake. Case law is clear that continuing to test positive for illegal drugs during a dependency-neglect case demonstrates potential harm. Allen v. Ark. Dep't of Human Servs. , 2011 Ark. App. 288, at 10, 384 S.W.3d 7, 12.
*544 Regarding adoptability, Corley and Bilbrey argue that because there was "no guarantee the siblings would be adopted together," termination could not be in their best interest. They also argue that given the length of time it would require to adopt the children, there was "no harm in ... affording them a little more time to see if they could maintain the home."
The Juvenile Code does not require certainty, let alone a "guarantee," that siblings be adoptable as a group. In fact, the case law provides that while keeping siblings together is a commendable goal and an important consideration, it is but one factor that must be considered when determining the best interest of the child. Ark. Dep't of Human Servs. v. Couch , 38 Ark. App. 165, 169, 832 S.W.2d 265, 267 (1992). In this case, the adoption specialist testified that the likelihood for sibling-group adoption was "very good." Thus, the trial court made no clear error when finding that these children are adoptable.
Affirmed.
Harrison and Hixson, JJ., agree.