--------
RAYMOND R. ABRAMSON, Judge *764 Melinda Foster appeals the January 3, 2018 Sebastian County Circuit Court's order terminating her parental rights to her three children, D.C., L.G., and J.A. On appeal, Foster waives any argument regarding D.C. and L.G. and addresses only the termination of her parental rights to her oldest child, J.A. Specifically, Foster argues that the circuit court erred in finding that termination was in J.A.'s best interest when he was in the physical custody of his father, Kevin Adamson. We disagree and affirm.
This case began on November 28, 2015, when a child made multiple phone calls from room 252 at the River Valley Inn and Suites to the hotel's desk clerk, and the clerk contacted the Fort Smith Police Department for a welfare check. There were concerns that the children had been left alone in the hotel room. The desk clerk reported that despite numerous attempts by hotel staff to make contact to determine whether there was an adult in the room, their efforts had been unsuccessful. When the police arrived, the children were in the room with three adults, at least two of whom appeared to be under the influence of drugs. The police found methamphetamine, needles, a spoon on the bathroom floor, and a firearm in a duffle bag on top of a dresser. Foster, who was in the room, tested positive for methamphetamine and amphetamine. Foster was charged with first-degree child endangerment, among other charges.
On May 12, 2016, the circuit court adjudicated D.C., L.G., and J.A. dependent-neglected and ordered that J.A. remain in Adamson's custody. DHS filed a petition for termination of parental rights on April 25, 2017. The court held a hearing on the petition on July 12, 2017.[1] The circuit court granted the petition terminating Foster's rights in an order entered on January 3, 2018. In doing so, the court explicitly considered the Juvenile Code's best-interest factors:
The Court finds by clear and convincing evidence that it is in the best interest of [D.C., L.G., and J.A.] to terminate the parental rights of their mother, Melinda Foster.... In making this finding, the court specifically considered (A) the likelihood that the juveniles will be adopted if the termination petition is granted; and, (B) the potential harm on the health and safety of the juveniles caused by returning [them] to the custody of [Foster]. The Court finds that *765 regardless of adoptability, it is in the best interest of all three (3) juveniles for the parental rights of [Foster] to be terminated.... The risk of harm to these children if returned to [Foster] is both physical and psychological in nature. The best predictor of future behavior is past behavior. [D.C. and L.G.] entered foster care previously under circumstances very similar to those that existed at the time of this removal. The behaviors of [Foster] after [D.C. and L.G.] were returned to [Foster] in the Scott County case could have been life-threatening to [D.C. and L.G.]. Despite all of the services provided to her in the first case, [Foster] reverted to her dangerous life-style when [DHS] was out of her life. [Her] effort to rehabilitate herself and her circumstances during the second removal have fallen far short of what she apparently did during the course of her first case. These children have suffered emotionally and psychologically as a result of being returned to [Foster] in the Scott County case. They are currently making progress on acquiring emotional stability. That progress needs to remain on track. [DHS] is not seeking to free [J.A.] for adoption, as he is in the permanent custody of [Adamson].... The court finds that permanency has been achieved for [J.A.]. The rights of his mother have been terminated. He is in the permanent custody of his non-offending parent, Kevin Adamson. No services are needed for [J.A.] or for his father. The court does not believe that it would be in [J.A.]'s best interest to have contact with his mother.
Termination-of-parental-rights cases are reviewed de novo. Hune v. Ark. Dep't of Human Servs. , 2010 Ark. App. 543, 2010 WL 2612681. At least one statutory ground must exist in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. M.T. v. Ark. Dep't of Human Servs. , 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Bunch v. Ark. Dep't of Human Servs. , 2017 Ark. App. 374, 523 S.W.3d 913.
We will not reverse a termination order unless the circuit court's findings were clearly erroneous. J.T. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 248, 947 S.W.2d 761, 763 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. , 947 S.W.2d at 763. However, we give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of witnesses. Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 40 S.W.3d 286 (2001). Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Meriweather v. Ark. Dep't of Health & Human Servs. , 98 Ark. App. 328, 331, 255 S.W.3d 505, 507 (2007).
On appeal, Foster does not challenge the circuit court's findings as to the statutory grounds for termination; she argues only that the court's best-interest determination was in contravention of our case law and Arkansas Code Annotated section 9-27-341(a)(3) (Supp. 2017), which provides that the purpose of our termination statute is to provide permanency in a juvenile's life when returning the juvenile to the family home is contrary to the *766 juvenile's health, safety, or welfare. In determining whether termination is in the best interest of a child, the circuit court must consider the entire history of the case and all relevant factors in the case, including the likelihood that the child will be adopted and the potential harm that would be caused by returning the child to the custody of the parent. Chaffin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 522, at 5, 471 S.W.3d 251, 255. Adoptability and potential harm, however, are merely two factors to be considered and need not be established by clear and convincing evidence. Id.
Foster relies primarily on four cases to support her argument: Caldwell v. Arkansas Department of Human Services , 2010 Ark. App. 102, 2010 WL 374432 ; Lively v. Arkansas Department of Human Services , 2015 Ark. App. 131, 456 S.W.3d 383 ; Cranford v. Arkansas Department of Human Services , 2011 Ark. App. 211, 378 S.W.3d 851 ; and Bunch v. Arkansas Department of Human Services , 2017 Ark. App. 374, 523 S.W.3d 913. All are distinguishable from the case before us.
To support her argument on appeal, Foster also cites our decision in Cranford , 2011 Ark. App. 211, 378 S.W.3d 851. The Cranford court did not agree that termination would necessarily provide greater stability in the child's life because the father had "demonstrated stability in housing and employment before his incarceration, and testified that he will be able to regain that stability after his release, which was anticipated to be only six weeks from the termination hearing." Id. at 10, 378 S.W.3d at 856. Such stability and reasonable hope for reunification is clearly lacking in the instant case.
*767 Foster's case is different from Bunch because here there is no evidence that continued contact with Foster would serve J.A.'s best interest in any way. Foster's dangerous behavior did not abate during the case, nor did she show any significant or measurable progress in complying with the case plan. Bunch, however, had been complying with the case plan at the time of termination and the prospect of reunification was good. Id. at 9-10, 523 S.W.3d at 919 ("We see little harm in affording Haylee more time toward reunification, and such efforts come with a potential benefit to the children.").
The intent of Arkansas Code Annotated section 9-27-341(a)(3) is to provide permanency in a child's life in all instances in which returning the child to the family home is contrary to the child's health, safety, or welfare, and the evidence demonstrates that a return to the home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. An order forever terminating parental rights must be based on clear and convincing evidence that the termination is in the best interest of the child, taking into consideration the likelihood that the child will be adopted and the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Here, the circuit court followed the requirements of the statute and therefore must be affirmed. The circuit court's decision that it was in J.A.'s best interest for Foster's parental rights to be terminated was not clearly erroneous; accordingly, we affirm.
Affirmed.
By agreement of all the parties, the matter was continued only as to Daniel Boulton, legal father of L.G. That hearing, which is not pertinent to this appeal, was held on September 6, 2017.