Cite as 2020 Ark. App. 533

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-20-389

|  |  |  |
|---|---|---|
| | | **Opinion Delivered:** November 18, 2020 |
| ANTONIO JOHNSON | | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION [NO. 60JV-18-1461] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE PATRICIA JAMES, JUDGE |
| | APPELLEES | |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Antonio Johnson appeals the March 19, 2020 order of the Pulaski County Circuit Court terminating his parental rights to his daughter, AJ. On appeal, he argues that the termination was not supported by substantial evidence and that it was not in AJ's best interest. We affirm.

On November 21, 2018, the Arkansas Department of Human Services (DHS) filed a petition for ex parte emergency custody and dependency-neglect. The case concerned Beatrice Dabbs and her three children, one of whom was then-four-year-old AJ. The children were removed from Dabbs's custody when she left them home alone without any adult supervision (the other two children were ages six and seven). Dabbs later said she had believed the children were old enough to stay home alone. At the time of the removal, DHS had an open protective-services case on the older two children for educational neglect.

An ex parte order for emergency custody was issued, and the children were later adjudicated dependent-neglected for neglect and parental unfitness. DHS was ordered to provide services to Dabbs and Johnson. Johnson, specifically, was ordered to submit to a drug-and-alcohol assessment, drug screens, counseling assessment, and a psychological evaluation. He was ordered to follow any recommendations accompanying those assessments. He was further ordered to attend and complete parenting classes and to maintain stable housing and income.

A review hearing was held on May 1, 2019. The circuit court received DNA evidence that Johnson is AJ's biological father. The court found that the parents were in partial compliance but that they needed to finish their services and make progress toward reunification. A permanency-planning hearing was held on October 23. The evidence at that hearing led the court to find that the parents had not made substantial progress but also that DHS had failed to make reasonable efforts to provide services to achieve the goal of the case. Even still, the goal of the case was changed to termination of parental rights and adoption.

DHS filed a petition to terminate Johnson's parental rights. In it, DHS alleged the termination would be in AJ's best interest and that the following grounds supported it: noncustodial parent failure to remedy, subsequent factors, and aggravated circumstances. On February 10, 2020, a hearing was held on the petition, and the court terminated Johnson's parental rights to AJ. Johnson timely appealed.

We review termination-of-parental-rights cases de novo. *Bunch v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 374, 523 S.W.3d 913. At least one statutory ground must

exist in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2019). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Bunch*, *supra*. A heavy burden is placed on a party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id*. We will not reverse a termination order unless the circuit court's findings are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*.

The termination-of-parental-rights analysis is twofold; it requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. The first step requires proof of one or more of the nine enumerated statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step, a best-interest determination, must consider the likelihood that the child will be adopted and the potential harm caused by returning custody of the child to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii).

On appeal, Johnson first argues that DHS failed to establish that Johnson is AJ's father. In *Earls v. Arkansas Department of Human Services*, our supreme court reversed a termination decision where DHS failed to establish the father's status as a "parent" as it is defined in our Juvenile Code. 2017 Ark. 171, at 8, 518 S.W.3d 81, 86. As used in the Juvenile Code, "parent" is defined as

> a biological mother, an adoptive parent, or a man to whom the biological mother was married at the time of conception or birth or who has signed an acknowledgment

3

of paternity pursuant to § 9-10-120 or who has been found by a court of competent jurisdiction to be the biological father of the juvenile[.]

Ark. Code Ann. § 9-27-303(40).

Antonio contends that *Earls*, *supra*, and *Northcross v. Arkansas Department of Human Services*, 2018 Ark. App. 320, 550 S.W.3d 919, require us to reverse the termination in this case. In *Earls*, no finding of paternity was ever made, and our supreme court reasoned that Earl's rights had not attached; thus, there were no rights to terminate. Likewise, in *Northcross*, the circuit court went so far as to reopen the record after the close of the hearing to state that Northcross had not petitioned to establish paternity. Northcross was listed on the DHS petition and in the termination order as a putative father. We reversed and remanded *Northcross* because the rights of a "putative father" are different from those of a "parent," and like *Earls*, a court cannot terminate parental rights that were never attached. *Northcross*, 2018 Ark. App. 320, at 9–10, 550 S.W.3d at 923–24.

This case, however, is more like *Johnson v. Arkansas Department of Human Services*, 2018 Ark. App. 221, at 12, 547 S.W.3d 489, 497. In *Johnson*, we held that when the circuit court stated in the termination-of-parental-rights order that the appellant had "completed a referred DNA test that showed him to be the biological father of the child" and that finding was supported by the record, there was sufficient evidence to establish him as a "parent" as contemplated by our Juvenile Code.

Here, Johnson's DNA results confirming him as AJ's biological father were introduced at the May 1, 2019 review hearing. At the termination hearing, Johnson testified that he is AJ's father. He was treated as a parent by DHS throughout the case and was provided services as one. In the termination order, the circuit court made an explicit finding

4

that Johnson is AJ's father, writing that

> [i]n the present case, DNA Results for Antonio Johnson as to [AJ] were introduced at the review hearing, indicating Mr. Johnson is the biological father of [AJ]. Although Mr. Johnson was only named as "father" in this Court's orders, this Court has treated Mr. Johnson as a legal father since DNA results were introduced. Mr. Johnson has participated in services through DHS, he has been present at every hearing in this case, and he was allowed to testify, question witnesses, and participate in this case. Furthermore, Mr. Johnson was appointed parent counsel to represent his legal interests for the termination hearing. Therefore, this Court finds Mr. Johnson has consented and acquiesced in this Court's finding that he has established his parental rights. This Court finds that Antonio Johnson is the biological father of [AJ], and raises his status as such.

Pursuant to our de novo review, we hold that the circuit court's finding that Johnson is AJ's father is supported by clear and convincing evidence.

Johnson next argues that the evidence was insufficient to support the statutory grounds for termination. Only one statutory ground is necessary to terminate parental rights. *Johnson*, 2018 Ark. App. 221, at 13, 547 S.W.3d at 498. One of the grounds on which Johnson's parental rights were terminated was the subsequent-factors ground. The subsequent-factors ground states that parental rights may be terminated when

> other factors or issues arose subsequent to the filing of the original petition for dependency–neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*. A parent's failure to comply with court orders can serve as a subsequent factor upon which termination can be based. *Miller v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 396, 525 S.W.3d 48. Likewise, continued drug use by a parent that is discovered after removal is considered a subsequent factor to support termination of parental rights. *Furnish v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 511, at

5

6, 529 S.W.3d 684, 688.

At the termination hearing, Andrew Beavers, a drug-and-alcohol counselor who completed Johnson's drug-and-alcohol assessment, testified that Johnson suffered from an opiate-use disorder. Melissa Trotter, a program assistant with DHS, testified that Johnson had completed one parenting class and missed seven others. Trotter further testified that Johnson tested positive for oxycodone a month before the termination hearing, and he could not provide her with a valid prescription to support the drug's use. Johnson testified that he was still in the process of completing his drug-and-alcohol classes. Johnson's failure to comply with the court's orders to attend and complete parenting classes, coupled with his continued drug use, supports termination under the subsequent-factors grounds.

Johnson argues that the record never supported that he had an opiate addiction because he had prescriptions; however, the only evidence supporting Johnson's position is his own testimony. He was never able to produce a copy of a prescription to match the drugs he was testing positive for, and it is up to the circuit court to weigh the evidence and judge the credibility of the parties. *Johnson*, *supra*.

Johnson also contends that DHS failed to prove that it offered him appropriate services to assist in remedying the subsequent issues. As mentioned above, DHS received a no-reasonable-efforts finding at the permanency-planning hearing, which covered a roughly six-month period in which the circuit court found that DHS had failed to make the required efforts. However, Johnson's noncompliance with the case plan was not isolated to the six months in which the circuit court found that DHS was not providing the family consistency with its workers and services. The circuit court found that Johnson's overall general lack of

progress demonstrated his indifference to remedying his issues. The circuit court's finding that subsequent factors existed to support terminating Johnson's parental rights was not clearly erroneous.

Next, a court may enter an order terminating parental rights if it finds by clear and convincing evidence that it is in the best interest of the child to do so. Ark. Code Ann. § 9-27-341(b)(3)(A). A best-interest finding under the Juvenile Code must include consideration of two factors: the likelihood of adoption and potential harm. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

Johnson does not contest the circuit court's adoptability decision. Instead, he argues that there was insufficient evidence of potential harm should AJ be returned to him. Johnson's continued drug use throughout the case, however, is indisputable evidence of potential harm. Arkansas appellate courts have said numerous times that evidence of continued drug use is in itself sufficient to support a finding of potential harm. *See, e.g.*, *Harjo v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 268, at 11, 548 S.W.3d 865, 871; *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d. 290. Our supreme court has held that a potential-harm analysis should be conducted in broad terms and in a forward-looking manner, and a parent's past behavior is often a good indicator of future behavior. *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 42 S.W.3d 397 (2001); *McGaugh v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 485, 505 S.W.3d 227. Given Johnson's drug use as recently as a month before the termination hearing, the circuit court's potential-harm findings were not in error. We affirm.

Affirmed.

GLADWIN and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor child.