Cite as 2021 Ark. App. 55

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-20-563

| | |
|---|---|
| PAUL CHRISTOPHER WATKINS<br>APPELLANT | **Opinion Delivered:** February 10, 2021 |
| | APPEAL FROM THE GREENE<br>COUNTY CIRCUIT COURT<br>[NO. 28JV-19-43] |
| V. | |
| | HONORABLE BARBARA HALSEY,<br>JUDGE |
| ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES AND MINOR<br>CHILD | AFFIRMED |
| APPELLEES | |

## RAYMOND R. ABRAMSON, Judge

Paul Christopher Watkins appeals the July 1, 2020 order of the Greene County Circuit Court terminating his parental rights to his daughter, A.W. (DOB: 3/3/19). On appeal, Watkins challenges the sufficiency of the evidence to support the statutory grounds for termination. Watkins does not challenge the circuit court's best-interest finding and therefore waives any argument regarding this finding on appeal. For the following reasons, we affirm the circuit court's decision based on the aggravated-circumstances ground for termination.

On March 19, 2019, the Arkansas Department of Human Services (DHS) exercised emergency custody of A.W. due to medical and environmental neglect. Specifically, A.W. resided in a home with her parents, Watkins and Simplicity Fernaays, that was filled with

trash, mice, and dog feces and that did not have furniture, heat, or running water. Additionally, A.W. was born with several medical issues, including an imperforated anus, and her parents demonstrated an incapacity to care for her multiple complex medical issues.

On March 20, DHS filed a petition for emergency custody and dependency-neglect for A.W. In the style of the petition, DHS listed only Simplicity Fernaays as a parent of A.W. Because Watkins was not married to Fernaays at the time of A.W.'s birth, DHS did not include him in the style of the case and listed him only as the putative father in the affidavit and body of the petition. On March 22, the circuit court entered an ex parte order for emergency custody of A.W.

On March 28, the circuit court held a probable-cause hearing and found that probable cause existed at the time of removal and continued to exist so that it was necessary for the emergency order to remain in place. Additionally, the circuit court ordered the parents to comply with the case plan and court orders, to obtain and maintain stable housing with utilities, to allow DHS into their home for home visits, and to maintain contact with DHS.

On April 22, the circuit court held an adjudication hearing. At the hearing, the circuit court adjudicated A.W. dependent-neglected on the basis of environmental neglect, which had since been remedied by the parents. Nevertheless, the circuit court found that A.W. could not be returned to her parents because the parents required additional training from Le Bonheur Children's Hospital for A.W.'s special medical conditions, which included issues related to A.W.'s imperforated anus. Additionally, the circuit court set a goal of reunification for the case and ordered that Le Bonheur provide a "clearance letter" reflecting

2

the parents' completion of medical training for A.W.'s complex medical issues. Further, the circuit court ordered that future visits occur in the parents' home unless there were environmental concerns.

On September 24, DHS filed an amended petition for emergency custody and dependency-neglect to reflect that Watkins had been added to the case style as a parent of A.W. On September 27, the circuit court held a review hearing and included Watkins in the case style as a parent of A.W. On the stipulation of the parties, the circuit court found the parents in compliance with the case plan and court orders. But the circuit court also found the parents still had ongoing issues with their personal hygiene, income, and ability to care for A.W.'s special medical needs. The circuit court additionally noted that Le Bonheur declined to issue the previously ordered "clearance letter," and as a result, the circuit court ordered DHS and the parents to seek this letter elsewhere. The circuit court ordered that the goal of the case would remain reunification.

On March 3, 2020, DHS filed a petition to terminate Watkins's and Fernaays's parental rights. On April 14, due to the COVID-pandemic, the circuit court entered an order continuing the termination hearing to June 22, 2020. Additionally, the circuit court noted that it had previously found Watkins to be a parent in this case and appointed him parent counsel for the termination hearing. On June 22, the circuit court entered an order terminating both Watkins's and Fernaays's parental rights on the grounds of "failure to remedy" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2019); "subsequent factors" pursuant to Arkansas Code Annotated section 9-27-

341(b)(3)(B)(vii); and "aggravated circumstances" pursuant to Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*. Watkins now appeals the termination order.[1]

We review termination–of–parental–rights cases de novo. *Bunch v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 374, 523 S.W.3d 913. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Bunch*, *supra.*

A heavy burden is placed on a party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id*. We will not reverse a termination order unless the circuit court's findings were clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*.

A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Arkansas Code Annotated section 9-27-341(b)(3)(B), and that termination is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Proof of only one statutory

---

[1]Simplicity Fernaays's rights were also terminated, but she did not appeal the termination decision and therefore is not a party to this appeal.

ground is sufficient to terminate parental rights. *Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, 474 S.W.3d 510.

As noted previously, Watkins challenges all three statutory grounds for termination but declines to challenge the circuit court's best-interest finding. *See, e.g.*, *Dye v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 10, at 9, 592 S.W.3d 254, 259 ("Miranda does not challenge the circuit court's best-interest factors—adoptability and potential harm; thus, this court must affirm these findings"). As such, we affirm the best-interest findings, and we also hold that the circuit court did not clearly err in finding that Watkins had subjected A.W. to aggravated circumstances, meaning that there is little likelihood that services to the family will result in successful reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*. Because we conclude that DHS adequately proved aggravated circumstances, we need not discuss the remaining grounds found by the circuit court.

A.W. was removed on March 19, 2019, and throughout the entirety of the case, DHS offered multiple services to achieve the goal of reunification such as visitation, home visits, transportation, parenting classes, a drug-and-alcohol assessment, purchase of cleaning supplies, and hands-on training to assist the parents with A.W.'s specific medical needs. Despite all efforts, the evidence demonstrated that there was little likelihood that further services would result in a successful reunification with Watkins.

Specifically, at the termination hearing, A.W.'s doctor, Dr. Vern Ann Shotts, testified that A.W. is one of the most complex patients she had cared for in her forty-one years of practice and that A.W. has the following medical conditions: an imperforated anus, rectovaginal fistula, persistent cloaca, hydronephrosis, abnormal middle vertebrae, an

5

abnormal number of ribs, a chromosome variant abnormality, and heart problems. Dr. Shotts also testified that A.W. was born with two vaginas with a rectum in between; that A.W. had colostomy surgery; that A.W. would need to see medical specialists for the rest of her life; and that all of A.W.'s medical conditions required daily monitoring as well as proper caretaker hygiene and training. Dr. Shotts further testified that A.W.'s parents are cognitively slow, failed to grasp the severity of A.W.'s medical conditions, and appeared unable to care for A.W. during her doctor's visits. Therefore, it was Dr. Shotts's opinion that neither parent would be able to properly care for A.W.

Jenny Sims, the DHS caseworker assigned to the case, and Christina Jankoviak, the Court Appointed Special Advocate (CASA) worker assigned to the case, both testified at the hearing and agreed with Dr. Shotts's assessment of the parents' capabilities. Specifically, Sims and Jankoviak testified that despite an enormous amount of assistance throughout the thirteen-month-long case, both parents continued to demonstrate the inability to assist with A.W.'s complex medical needs as well as the inability to complete basic parenting tasks, such as changing diapers, making bottles, changing outfits, and holding and bathing A.W.

Sims and Jankoviak also testified that throughout the case, the parents failed to consistently provide a clean and safe living environment for A.W. and failed to maintain appropriate personal hygiene—both of which were essential to ensuring the cleanliness of A.W.'s stoma site. Sims testified that during one visit with A.W., she noticed the parents feeding A.W. with a bottle that contained floating particles of tobacco. Additionally, both Sims and Jankoviak testified that A.W. could not be reunited with the parents because they

6

had allowed Watkins's sister to move in with them, and Watkins admitted that his sister had sexually abused him as a child and has a history of drug abuse.

Chelsea Spencer, the parent educator assigned to the case, also testified at the termination hearing. Spencer provided hands-on parenting-skills training to the parents. Spencer testified that since August 6, 2019, she had twenty face-to-face visits and five Zoom visits with the parents and that during these visits, she taught the parents skills such as soothing and calming techniques, diaper changing, and feeding. Spencer further stated that during her time as the parents' educator, Watkins demonstrated improvement in parenting skills. Nonetheless, like the other witnesses, Spencer stated Watkins's improvements were inconsistent and that she continued to have concerns with the parents' long-term ability to care for A.W.

On appeal, Watkins cites *Yarborough v. Arkansas Department of Human Services*, 96 Ark. App. 247, 240 S.W.3d 626 (2006), and argues that the circuit court made a "mere prediction" regarding whether further reunification services would result in a successful reunification. Watkins contends that the circuit court's finding was a "mere prediction" because he testified that he was ready to have A.W. returned to his custody, which demonstrates that reunification was possible. Watkins also claims that the circuit court's finding was a "mere prediction" because he was employed during the case, and he introduced pictures that showed he remedied the environmental issues in his home. Watkins further argues that it was unfair for the circuit court to consider the adverse witnesses' testimony because some of the witnesses only observed Watkins's parenting skills in an "unnatural parenting environment" outside the family home.

We do not find Watkins's arguments persuasive, and we agree with DHS's position that his appellate arguments are nothing more than a request for our court to reweigh the evidence on appeal, which we will not do. Further, Watkins fails to cite any legal authority to support these arguments. *E.g.*, *Peterson v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 75, at 14, 595 S.W.3d 38, 46 ("Rachel essentially asks this court to reweigh the evidence, which we will not do."); *Davis v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 406, at 14, 587 S.W.3d 577, 585 ("Although Deana argues that the circuit court clearly erred because the children were bonded to her and expressed a desire to go home, she cites no legal authority to demonstrate that these facts, even if true, would support reversal.").

As DHS argues, the state of Watkins's home was actually the reason that the visits occurred in an "unnatural parenting environment." Specifically, at the adjudication hearing, the circuit court ordered that visits occur in the parents' home unless it was environmentally unsound, and Sims testified that at almost every home visit, she observed roaches, urine around the toilet seats, and sharp food cans strewn about the house. Thus, there is no merit to Watkins's argument that supervised visits in an "unnatural" setting caused him too much stress to demonstrate his ability to care for his child's medical needs.

Our court has affirmed termination under the aggravated-circumstances ground when the parents have demonstrated an inability to care for their child's special needs despite complying with case-plan services. *See Allen v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 136, at 16–19, 540 S.W.3d 742, 751–53. Such is the case here. Furthermore, both Spencer and Sims testified that there were no other services they could provide to achieve reunification with Watkins, and we have consistently held that such testimony supports an

aggravated-circumstances finding. *See Reyes-Ramos v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 46, at 11–12, 571 S.W.3d 32, 39 (affirming termination under the aggravated-circumstances ground based, in part, on the caseworker's testimony that there were no further services that DHS could offer to reunify appellant with her children).

The circuit court's finding that aggravated circumstances existed to support terminating Watkins's parental rights was not clearly erroneous. Accordingly, we affirm.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor child.