MIKE MURPHY, Judge
Avonis Fisher appeals the termination of his parental rights to his child, AF. On appeal he argues that termination of his parental rights was not in AF's best interest. We affirm.
On February 2, 2017, the Arkansas Department of Human Services (DHS) took an emergency seventy-two-hour hold on AF, who was a little over a month old at *887 the time, because AF's mother, Erika Hood, had an open foster-care case for another child, NR.[1] Fisher was named as AF's putative father.
The case progressed through probable-cause and adjudication hearings. AF was adjudicated dependent-neglected. Fisher was named the biological father, and both parents asked that AF be placed with Fisher's mother. Fisher was ordered to participate in services, and the goal of the case was set as relative placement. A permanency-planning hearing was held on June 13, 2017. AF remained in DHS custody. Fisher missed his appointment for his psychological evaluation, and the circuit court again ordered him to submit to a psychological evaluation. It was also ordered that if the parents requested services, DHS was ordered to provide the services. The circuit court found that DHS had made reasonable efforts to achieve reunification. A month later, the circuit court entered an order directing that the placement decision regarding Fisher's mother, Lajuane Fisher, be expedited pursuant to the Interstate Compact on the Placement of Children (ICPC).
On October 10, 2017, DHS filed a motion to authorize an ICPC placement based on the receipt of a favorable home study on the paternal grandmother. On November 2, 2017, the attorney ad litem filed a response to DHS's motion, arguing that the potential placement with the paternal grandmother was not in AF's best interest.
On December 12, 2017, the circuit court held another permanency-planning hearing and continued the goal of relative placement. The circuit court heard testimony from the paternal grandmother and determined "the court cannot authorize ICPC placement with [the paternal grandmother]." The circuit court's decision was due to the criminal record of the grandmother's boyfriend, a drug raid on her home in 2016, and the court's assessment that the grandmother had credibility issues. That following February, a final permanency-planning hearing was held. The goal of the case was changed to include termination of parental rights and adoption, but the court also ordered home studies on both the paternal grandfather and uncle. DHS was found to have made reasonable efforts. On February 23, 2018, the attorney ad litem filed a petition for termination of both parents' parental rights, alleging the grounds of failure to remedy,[2] subsequent factors,[3] prior findings of neglect or abuse,[4] and aggravated circumstances.[5]
A termination hearing was held on May 15, 2018. The court first heard testimony from an adoption specialist, who testified that there were over five hundred matches available for AF. It next heard from the family-service worker assigned to the case, Breanna Earnest. Earnest testified about the services offered to the parents. She testified that Fisher had not completed any counseling and that he had declined to submit to drug screening. Earnest stated that there was a bond between AF and Fisher and that he had made an effort to see his child. Fisher testified. He stated that he was currently living with his grandmother but that he was still in a relationship with AF's mother. He testified that he wanted the child to be placed with *888 his grandfather. AF's mother, Erica Hood, testified that she believed it was appropriate for AF to be returned to her care but that if that was not an option that AF should go to Fisher's grandfather. In Fisher's closing argument, he reiterated his request to place AF with a relative. At the conclusion of the hearing, the circuit court terminated Fisher's parental rights, finding that it was in AF's best interest to do so. Fisher now appeals.
We review termination-of-parental-rights cases de novo. Bunch v. Ark. Dep't of Human Servs. , 2017 Ark. App. 374, 523 S.W.3d 913. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. Bunch, supra. A heavy burden is placed on a party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. Id. We will not reverse a termination order unless the circuit court's findings are clearly erroneous. Id. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id.
The termination-of-parental-rights analysis is twofold; it requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. The first step requires proof of one or more of the nine enumerated statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step, a best-interest determination, must consider the likelihood that the children will be adopted and the potential harm caused by returning custody of the children to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii).
On appeal, Fisher does not challenge the statutory grounds and instead limits his argument to the best-interest determination. But even within his best-interest argument, Fisher does not address the findings associated with adoptability or potential harm. Because Fisher has not challenged the court's decision as to the grounds for termination, adoptability, or potential harm, we need not address them now. Instead, Fisher contends that the circuit court's determination to terminate his parental rights in lieu of pursuing relative placement demonstrates reversible error.
Fisher argues that there was error because one of the goals throughout the case was relative placement, and at the time of the termination hearing, AF had multiple relatives available for placement that had not been assessed by DHS. Citing Caldwell v. Arkansas Department of Human Services , 2010 Ark. App. 102, 2010 WL 374432, and Lively v. Arkansas Department of Human Services , 2015 Ark. App. 131, 456 S.W.3d 383, Fisher argues that this is contrary to Arkansas law because without a conclusive decision on the relative-placement issue, it would be impossible for the circuit court to conduct a full best-interest analysis.
This case, however, is distinguishable from Caldwell and Lively , which are one-parent termination cases. In those cases, the child was in the custody of one parent when the other parent's rights were terminated, which severed all legal relationships between the child and the terminated parent's relatives. In both Caldwell and Lively , the children were in the mother's custody, and termination of the father's rights jeopardized the children's relationships *889 with paternal relatives who were stable influences on the children. Lively , 2015 Ark. App. 131, at 8-9, 456 S.W.3d 383, 388 ; Caldwell , 2010 Ark. App. 102, at 7. Here, there is no evidence that AF had a relationship with any of her relatives, let alone one that would be characterized as a stable influence.
Fisher identifies both his uncle and his grandfather as possible placements for AF. However, the record indicates that DHS did pursue possible placement with Fisher's uncle but that reports indicated "he did not want to go forward with the process" and "refused" a home study. Regarding potential placement with Fisher's grandfather, the DHS caseworker stated in the court report that a request for an ICPC home study had been submitted but that DHS was still waiting for a response from the grandfather's home state. From the bench, however, the circuit court noted that the ICPC process "takes a long time" and that AF needed permanency.
Fisher next contends that the circuit court erred because it was required to look for ways to effectuate case goals and permanency through less extreme remedies than termination, such as in Ivers v. Arkansas Department of Human Services , 98 Ark. App. 57, 250 S.W.3d 279 (2007), and Rhine v. Arkansas Department of Human Services , 101 Ark. App. 370, 278 S.W.3d 118 (2008). This is not a case, however, like Ivers , where the noncustodial parent demonstrated "commendable resolve in seeking to remedy his drug problem" to achieve reunification, because Fisher never sought reunification. Nor is it like Rhine , which dealt with the circuit court's abuse of discretion in denying a motion for continuance so that the mother could sign a consent to the termination of parental rights.
The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3) ; Robinson v. Ark. Dep't of Human Servs. , 2017 Ark. App. 251, at 5, 520 S.W.3d 702, 705. Here, at the time of the termination hearing, AF had lived in foster care for over fifteen months. Fisher requests more time to find an appropriate relative willing to care for AF, but this kind of wait-and-see approach is the definition of instability from which the termination statute intends to protect children. See Smith v. Ark. Dep't of Human Servs. , 2017 Ark. App. 368, at 12, 523 S.W.3d 920, 927. After a de novo review, we are not left with a definite and firm conviction that a mistake has been committed.
Affirmed.
Abramson and Harrison, JJ., agree.

NR had entered foster care due to exposure to extreme cruelty and the unexplained death of a sibling in the care of the mother. The mother is not a party to this appeal.

Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b) (Supp. 2017).

Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) .

Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(a) .

Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(B) .