Cite as 2020 Ark. App. 313

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV–20–3

| | |
|---|---|
| | **OPINION DELIVERED:** MAY 20, 2020 |
| BRANDON AND MEGEAN JOHNSON | APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 42BJV-19-13] |
| APPELLANTS | |
| V. | HONORABLE TERRY SULLIVAN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | AFFIRMED |
| APPELLEES | |

## ROBERT J. GLADWIN, Judge

The Logan County Circuit Court terminated Megean and Brandon Johnson's parental rights to their four children, BJ (born May 9, 2007), MJ (born May 31, 2010), and twins RJ and CJ (born April 21, 2017). Megean and Brandon appeal in separate briefs, and both argue that the circuit court clearly erred by finding that it was in the children's best interest to terminate parental rights. We affirm.

## I. *Facts*

Appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect on April 15, 2019, alleging that the children were at risk of serious harm as a result of abuse, inadequate supervision, neglect, and parental unfitness. The attached affidavit reflects that Megean and Brandon were noncustodial

parents of BJ and MJ and the custodial parents of RJ and CJ. The six lived with Brandon's mother, Christie Elliott, who had legal custody of BJ and MJ.

The history of involvement between DHS and the parents is described in the affidavit as follows: A protective-services case was opened in April 2009 for neglect and inadequate supervision because twenty-month-old BJ was found by a police officer on the highway; this case was closed after the family secured appropriate housing. A second protective-services case based on neglect and inadequate supervision was found to be true in July 2013 when five-year-old BJ was found over a half mile from home, and both parents tested positive for methamphetamine. The parents refused services and did not comply with the case plan or obtain sobriety; however, the case was closed when the circuit court gave custody of BJ and MJ to Christie and ordered the parents to have only supervised visitation. In February 2015, DHS investigated whether Michael Elliott, Christie's husband, had sexual contact with MJ and LJ, who is a cousin to the children. The investigation found the allegation regarding LJ to be true, but this finding was overturned on appeal in May 2016.

The affidavit states that on November 7, 2018, a true finding was made that Michael had victimized MJ by subjecting her to sexual contact, sexual penetration, sex (oral), indecent exposure, pornography of live sex acts, and solicitation. DHS began providing the family with counseling, trauma-based counseling, worker visits, case management, and attempted drug screens.[1] During home visits, it was discovered that Brandon and Megean were living in Christie's house along with BJ, MJ, and the twins. Despite the court's

---

[1]Testimony at the termination hearing established that Michael Elliott was not allowed back into the home after MJ disclosed the abuse in November 2018.

supervised-visitation order, Christie regularly left the children unattended with Megean and Brandon. Further, it was alleged that on various occasions, other family and nonfamily members were living in the home and in a shed on the property. Further, the home had a constant stream of visitors, one of whom stated that he was there to buy "expensive cigarettes" from Brandon.

Brandon and Megean refused drug testing throughout the case. On two occasions, Brandon told DHS workers that he would test positive for methamphetamine because he "worked for the sheriff's department." In February 2019, the home was found to have "plumbing issues" and to be dirty with rotten food in dishes, rodent and dog feces on the floors, and mold throughout. DHS workers counseled the family, discussed needed repairs, and provided cleaning supplies and instruction. In March, Megean disclosed that a no-contact order had been placed on her and Brandon because of an altercation between them.

The affidavit describes that on April 11, DHS workers could smell the odor of animal urine and feces before opening the door to the home. Inside, the odor was pungent and there were swarms of flies throughout the kitchen. Covering the cabinet tops were dirty dishes, various nonkitchen items, wine glasses with wine in the bottom, and food spills. In the dining and living area, there were several piles of dirty laundry. The children were taken into DHS custody on a seventy-two-hour hold.

An ex parte order for emergency custody was filed on April 15, and a probable-cause hearing was held on April 17. The circuit court found probable cause to continue DHS's custody of the children, and Megean and Brandon were ordered to submit to random drug screens and to comply with the case plan.

3

DHS filed a "Motion for Child Hearsay" on May 24. DHS alleged that MJ, who was under the age of ten, had disclosed allegations of sexual abuse by her grandfather, Michael, and that her parents and Christie knew about the allegations. DHS stated that the motion was to notify the parties of its intent to offer her statement.

An adjudication hearing was held on June 19, and the court's July 2 order found the children to be dependent-neglected based on abuse, neglect, and parental unfitness. Megean, Brandon, and Christie stipulated that the allegations in the petition were true and correct, that MJ had been sexually abused by Michael, and that they failed to protect her from that sexual abuse. They stipulated that MJ's forensic interview would show that she was sexually abused, the abuse was ongoing for years, and she had told Megean, Brandon, and Christie about the abuse. Further, they stipulated that Megean, Brandon, and Christie neglected the children by inadequate supervision because of their drug use and the inappropriate and unsafe people in the home; by environmental neglect; by parental unfitness due to drug use in the home, drug use by the father, and inappropriate and unsafe people in the home; and the domestic violence that occurred in the home between Brandon and Megean. The court found that the parents and custodian were unfit and that the children could not be returned to them, and the goal of the case was reunification with the parents. Supervised visitation was ordered, and both parents were ordered to comply with the case plan, which included hair-follicle drug tests, drug-and-alcohol assessments, psychological evaluations, and counseling.

On August 15, DHS filed a petition for termination of parental rights against both parents. The alleged statutory grounds for termination were Arkansas Code Annotated

section 9–27–341(b)(3)(B)(vi)*(a)* (Supp. 2019) (dependency-neglect found as a result of sexual abuse perpetrated by parents or stepparents); section 9–27–341(b)(3)(B)(vii)*(a)* (other factors arose subsequent to filing of original petition; despite services, the parent has manifested incapacity or indifference to remedy those issues); section 9–27–341(b)(3)(B)(ix)*(a)(3)(B)(i)* (aggravated circumstances based on sexual abuse); and section 9–27–341(b)(3)(B)(ix)*(a)(3)(B)(i)* (aggravated circumstances in that there is little likelihood that services will result in reunification).  DHS also alleged that termination of parental rights was in the best interest of the children, considering that they are adoptable and that they would be subjected to potential harm if returned to their parents' custody, including the potential harm related to their parents' failure to protect them from sexual abuse.

A hearing on DHS's petition was held on September 18.  Megean, Brandon, Logan County sheriff's deputy Michael Huber, Booneville police officer Kevin Kimbrell, mental-health therapist Cara Hicks, DHS caseworker Carri Angelia Dodd, and forensic interviewer Jennifer Cannavan testified.  During Cannavan's testimony, her videotaped forensic interview of MJ was played for the court and admitted as evidence.  The court found that MJ's disclosure of sexual abuse had a reasonable guarantee of trustworthiness and that the disclosure was credible.  The court dismissed Christie as a party to the case, finding that it would not be in the children's best interest to be placed in her custody.  The court found that DHS proved three alleged statutory grounds by clear and convincing evidence: (1) subsequent factors; (2) aggravated circumstances based on sexual abuse; and (3) aggravated circumstances based on little likelihood that services would result in reunification.

5

Along with the stipulations made by the parents at the adjudication hearing, the court's order recites the following in support of its finding that other factors or issues arose subsequent to the filing of the original petition that support termination of parental rights:

> The parents have both been dishonest throughout this case specifically concerning their drug use, the domestic violence in the home, and their daughter's sexual abuse. The parents denied drug use at the beginning of the case. Finally, after the adjudication hearing, the mother admitted to [DHS] that she had used methamphetamines since the juveniles were removed and she needed drug treatment. The mother was offered drug treatment, but she did not attend. The mother testified subsequently at the termination of parental rights hearing that she had lied when she told [DHS] that she had used methamphetamines in an attempt to gain custody of her children faster, and that she did not have a drug problem. The father has denied and admitted drug use throughout this case. The father has been referred five (5) times for drug and alcohol assessment and missed every single one. The mother has missed a drug and alcohol assessment as well. The father and the mother have missed drug screens and multiple hair follicle tests. Neither parent has attended their treatment or counseling as scheduled.

Regarding the court's finding that it was in the children's best interest to terminate parental rights, the court stated:

> The Court finds the testimony of the worker, Carri Dodd, to be credible and demonstrates how all of the above-named juveniles would be at risk of potential harm if returned to the parent. The Court finds the chronic and unchecked sexual abuse the juvenile [MJ] endured, the chaos that has continued in the home, the unsavory and criminal element that the family has allowed to sleep in the same room as their children, the domestic violence in the home, and the complete instability these children have suffered, show they would be placed at great risk of serious physical and emotional harm if they were ever returned to the parents. The Court further finds that even if there were any issues of adoptability, they would be outweighed by the great risk of harm in returning any of these juveniles to Brandon or Megean Johnson.

Each parent filed a timely notice of appeal, and this appeal followed.

## II. *Standard of Review*

We review termination-of-parental-rights cases de novo. *Fisher v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 39, 569 S.W.3d 886. An order forever terminating parental

6

rights shall be based on a finding by clear and convincing evidence that it is in the juvenile's best interest, including consideration of the likelihood that the juvenile will be adopted and the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3). In addition, at least one statutory ground must exist. *Id.* Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Fisher, supra.* A heavy burden is placed on a party seeking termination because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id.* We will not reverse a termination order unless the circuit court's findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

In determining potential harm, which is forward looking, the court may consider past behavior as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Brown v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 370, 584 S.W.3d 276. There is no requirement to establish every factor by clear and convincing evidence; after consideration of all factors, the evidence must be clear and convincing that termination is in the best interest of the child. *Id.*

### III. *Discussion*

### A. Statutory Grounds

Neither parent challenges the sufficiency of the evidence supporting the statutory grounds for termination. The adjudication order reflects both had stipulated that, among

7

other things, MJ was sexually abused by Michael Elliott over a period of several years and that they had failed to protect her after MJ told them of the abuse  The adjudication order was not appealed, and the parents are now barred from challenging that they failed to protect MJ from sexual abuse on appeal of the termination-of-parental-rights order. *Brown v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 303, 521 S.W.3d 183.  Abuse or neglect of one sibling can establish that another sibling is at substantial risk of serious harm. *Eason v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 507, 423 S.W.3d 138.  Therefore, the statutory-ground element is satisfied by the parents' stipulation, and an appeal based on the statutory-grounds findings is barred.

### B. Best Interest

However, the parents challenge in separate briefs the circuit court's finding that termination of parental rights is in their children's best interest.  In determining the best-interest element, the circuit court considers the likelihood of the child's adoption and the potential harm to the child if returned to the parents.  Ark. Code Ann. § 9-27-341(b)(3).  Both parents acknowledge that it is well settled that a parent's past behavior is an indicator of likely potential harm should the child be returned to the parent's care and custody. *Gonzalez v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915; *Parnell v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 108, 538 S.W.3d 264.

Megean and Brandon argue that their case is distinguishable from *Yelvington v. Arkansas Department of Human Services*, 2019 Ark. App. 337, 580 S.W.3d 874, wherein this court held that the mother's failure to demonstrate the ability to protect her child and keep him safe supported the circuit court's assessment of potential harm:

[S]he not only failed to protect CY from his father—whom she knew had received two true findings for sexually abusing children—but she also failed to alert either the police or DHS once she learned her child had been raped. In fact, after CY had disclosed the abuse to her, [the mother] failed to do anything or take any protective actions such as seeking medical attention for CY or counseling to help her young son deal with the trauma of sexual abuse. Instead, she instructed CY not to tell anyone about the abuse.

*Yelvington*, 2019 Ark. App. 337, at 7, 580 S.W.3d at 878.

In contrast, Megean and Brandon argue that MJ was in Christie's legal care and custody—not theirs—when the abuse occurred. Further, they rely on the fact that the previous "true" finding that Michael committed sexual abuse was overturned on appeal in 2016. They both contend that Michael was not allowed back into the home after MJ's allegation became known in November 2018.

Megean contends that she was unaware of the abuse until law enforcement informed her of it on November 8, 2018, and that when she was told, she immediately secured trauma services and counseling for MJ. Brandon claims that when MJ disclosed the abuse to him by asking "for a friend" about what to do, he was not aware that it was MJ who had suffered the abuse. They claim, therefore, that their past behavior is not indicative of potential harm.

DHS and the attorney ad litem argue that no legal authority is cited for the proposition that *Yelvington* is the only standard for potential harm. They contend that even if it were, the Johnsons' case is exactly like *Yelvington* because the appellant had failed to protect her child from sexual abuse and failed to appeal the finding in the adjudication order. *Yelvington*, 2019 Ark. App. 337, at 6, 580 S.W.3d at 878.

Megean also argues that because of the short duration of the case, she did not have any meaningful opportunity to avail herself of services to address the other issues that arose

9

regarding purported substance abuse and the home environment. Brandon also contends that he and Megean had only three months between the adjudication order and the termination hearing, which gave them little time to submit to, and comply with, services.

Brandon argues that there is no "past behavior" that indicates the children would be at risk of harm upon the completion of services. He contends that no services were offered during the protective-services case other than the purchase of cleaning supplies. He argues that drug screens are not a remedial service and that he did not have a meaningful opportunity to address the issues that actually brought the children into care, given that DHS left the children in the home for five months following the last disclosure of sexual abuse. He contends that the other issues in the family—environmental, drug abuse, mental health, and domestic violence—are issues to be addressed with services. He claims that he went multiple times to begin treatment, that he had begun to remedy his drug use, that he had obtained employment, and that he had no pending criminal issues during the case.

DHS and the attorney ad litem contend that sufficient evidence supported the circuit court's best-interest finding and that termination of parental rights should be affirmed. For potential harm, a circuit court is not required to identify actual harm, it must view the harm in a forward-looking manner, and it may consider harm caused by lack of stability in a permanent home. *Gonzalez*, 2018 Ark. App. 425, at 12, 555 S.W.3d at 921. Additionally, evidence of a parent's continued drug use or failure to comply with court orders constitutes sufficient evidence of potential harm. *Id.* at 12–13, 555 S.W.3d at 921–22. Further, evidence that supports a subsequent-factors finding also supports a potential-harm finding. *E.g.*, *Id.* at

12, 555 S.W.3d at 921; *Rivera v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 405, at 15, 558 S.W.3d 876, 885.

We hold that the circuit court's best-interest finding was not clearly erroneous. Brandon admitted missing five drug-and-alcohol-assessment appointments and three hair-follicle-test appointments. Both parents admitted that they had engaged in domestic violence, continued to associate with inappropriate individuals, failed to maintain an environmentally safe home, continued methamphetamine use, failed to maintain stable employment, and failed to attend counseling. Further, DHS had offered them multiple services in previous protective-services cases, and they failed to participate. Past behavior may be considered a predictor of likely potential harm should the child be returned to the parent's care and custody. *Gonzales*, *supra*. Accordingly, we affirm.

Affirmed.

HARRISON and HIXSON, JJ., agree.

*Dusti Standridge*, for separate appellant Brandon Johnson.

*James & Streit*, by: *Jonathan R. Streit*, for separate appellant Megean Johnson.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.